People ex rel. Heffernan, Appellee, v. Smykal, Acting Commissioner of the Department of Buildings, City of Chicago; Stephen E. Hurley, President; Albert W. Williams and John J. Ahern, Members of and constituting the Civil Service Commission of the City of Chicago; James H. Dillard, Comptroller of the City of Chicago; and David L. Hartigan, Acting Treasurer of the City of Chicago, Appellants.

Gen. No. 46,868.

First District, Second Division.

April 9, 1957.

Released for publication May 21, 1957.

John C. Melaniphy, Corporation Counsel of the City of Chicago, for appellants; Louis Karton, Head of Appeals and Review Division, Sydney R. Drebin, and Robert J. Collins, Assistant Corporation counsel, of Chicago, of counsel.

Michael R. Ryan, of Chicago (Richard F. McPartlin, Jr., of counsel) for appellee.

JUDGE SCHWARTZ delivered the opinion of the court.

Defendants appeal from an order sustaining plaintiff's (relator's) motion for judgment on the pleadings

and ordering the issuance of a writ of mandamus against defendants, commanding them to reinstate plaintiff immediately to his position as a building inspector in the classified service of the Department of Buildings of the city of Chicago and to be paid his back salary at the rate of $5,382 per year for certain periods set forth in the order.

The first question to be considered is whether the complaint on its face states a cause of action. If it does not, then the motion for judgment should have been denied, and a motion to strike previously filed by defendants and overruled by the court should have been sustained.

Plaintiff passed a civil service examination and on August 6, 1954, was appointed a building inspector. Under the law he was a probationer for a period of six months, with no tenure or other rights of a civil service employee, the law providing that within that six month period only the head of the department could discharge him, upon assigning in writing his reason therefor to the Civil Service Commission and obtaining its consent. Plaintiff's period of probation expired February 5, 1955. On February 2nd he received a letter from the secretary of the Civil Service Commission requesting him to appear before the Commission on February 3. He appeared and was interviewed by Stephen E. Hurley, president of the Commission.

On February 4, 1955, the Acting Commissioner of the Department of Buildings sent a letter to the president of the Civil Service Commission stating that effective February 4 he was terminating plaintiff's services because the experience rating sheets filed in his civil service examination contained false and misleading information as to education. On the same day a letter was sent by the Commission to the Acting Commissioner stating that an order was entered granting authority for plaintiff's discharge, and the records in-

345

dicate that authority was so granted in the minutes of the Commission of February 4, 1955. On February 4th the Acting Commissioner of Buildings wrote plaintiff advising him that his services were terminated February 4th because plaintiff "made false and misleading statements in your application." Plaintiff avers that he reported for work on February 7 and then for the first time learned of his discharge. He avers he did not receive the letter of February 4 until February 7.

One who seeks a writ of mandamus must show a clear legal right thereto. This is particularly applicable to a case in which an administrative official is commanded to perform administrative acts. The problem of employment here dealt with affects the management of a civil service system in which thousands are employed and in which integrity and discipline are important factors. It is the duty of building inspectors to discover and report with truth and accuracy violations of building laws on which the safety and health of millions depend. In this city as many as 2000 inhabitants may be found living in a single building, such as the one involved in Kushner v. Lawton, 351 Ill. App. 422. Examining the complaint in this light, we find it inadequate, inconsistent and equivocal.

The letter from the Commissioner to plaintiff was dated February 1, 1955, and called for a review of plaintiff's Experience Rating Form. Plaintiff avers that he was interviewed with respect to the number of years he attended high school, but he does not deny and yet does not admit that the representations he made were false. There is a clear inference that they were false, because he asserts that attendance or graduation from high school was not a qualification for eligibility to participate in civil service examinations for building inspectors. Such an averment would be irrelevant if the representations plaintiff had made as to his education were true.

346

Plaintiff charges that it was the head of the Civil Service Commission who initiated the movement for his discharge, and not the department head; that therefore he was unlawfully discharged because it is only the department head who, with the Commission's consent, has the power to discharge a probationer. The fact is that the department head wrote the letter of February 4 to the Commission, advising it that he was terminating plaintiff's services on that date. On the same day a letter was sent from the Commission to the Building Commissioner granting authority for the discharge. Which letter came first and to whom does not appear nor do we think it is of any consequence. Plaintiff asserts that the president of the Civil Service Commission was usurping authority and that he pressured the Building Commissioner into the action taken. These are conclusions on his part. He states no facts to support them. We must assume that the Building Commissioner and the president of the Civil Service Commission knew and understood their legal powers and limitations. Plaintiff appears to think it was wrong for the president of the Civil Service Commission to inquire into the facts relating to plaintiff's statements about his education and a usurpation of authority to call the attention of the department head to the fact that these statements were false. We do not so consider it. On the contrary, we think he performed his duty.

In People ex rel. Weichern v. Smykal, 12 Ill.App.2d 398, decided by the First Division of this court, the court had before it a similar suit brought by an employee of the Building Department who was discharged during his probationary period. In that case the court held that a judgment on the pleadings was error and that the trial court should have sustained the motion to strike the complaint. The court cited People ex rel. Jendrick v. Allman, 396 Ill. 35, where the court held

347

unconstitutional an amendment to the Civil Service Act providing that no person appointed in the classified civil service who was entitled to military preference should be removed or discharged because he misstated his age. The Supreme Court said this statute not only granted immunity for the consequences of a fraudulent act, but rewarded it by reinstating the guilty party to a position obtained fraudulently. This, the court said, is repugnant to the constitutional provision against granting special privileges and immunities to favored classes and to basic morality.

■ ■ The complaint in the case before us shifts away from the charge that it was the president of the Civil Service Commission who arranged the discharge and takes the position that the consent of the Commission was not obtained. Plaintiff bases this on an argument that there was no meeting of the minds of the Commissioner and Commission because the reason given *plaintiff* by the Commissioner was that plaintiff had made false and misleading statements in his application, and the reason given to the Civil Service Commission was that plaintiff's *experience rating sheets* contained false and misleading information. Therefore, he says, the Commission could not give a proper intelligent and valid consent. Non-sequitur is the description given this kind of conclusion. Plaintiff cites People ex rel. Walker v. O'Connor, 351 Ill. App. 545, to support his position. The facts in the Walker case were substantially different from those in the instant case. There, the letter from the Chief of Police to the Commission stated that the plaintiff had submitted a false report relative to his indictment on the charge of rape. On that basis the Commission granted authority and he was discharged. The fact was that he had not made a false report (presumably the reports made by policemen to their superior officers) but made a false statement in an application. The court said this

did not constitute a meeting of the minds and hence was not consent, as the Commission did not consent to the reason. In the instant case the letter sent to the Commission by the head of the department stated as the reason for discharge that "the experience rating sheets filed in the Civil Service examination . . . contained false and misleading information as to education." This is precisely the fact which, according to the complaint, was first uncovered by the Commission and reported to the department head as the basis for discharge. Hence, there was a meeting of the minds both on the discharge and the reasons therefor. However, the consent required in the statute is only as to the discharge and not as to the reason set forth.

■ ■ Plaintiff argues that he had completed his probationary period at the time of the discharge. That period ended Saturday, February 5. On Monday, February 7, plaintiff reported for work and signed the time sheets. He argues that having gone to work on February 7 and having signed the time sheets showing two inspections on February 5 he thereby completed his probationary period. Assuming that what plaintiff says is true, that he did not receive notice until February 7 and that on that date he reported for work and signed the time sheets, he cannot by that act be considered to have served out his probationary period and be entitled to have the protection and tenure of the Civil Service Act. Section 10 of the city Civil Service Act (Ill. Rev. Stat. 1955, Ch. 24½, Par. 48) provides that at or before the expiration of the probation period, the head of a department may, by and with the consent of the Civil Service Commission, discharge a probationer upon assigning in writing his reasons therefor to the Commission. No provision is made in this Act for notice to the probationer. Plaintiff argues that "in the very nature of things, it is necessary to communicate a discharge to an employee

349

before it can be said to be effective." Of course, at some time and place the employee stops working. That does not enlighten us on the issue before us. What we are here considering is not an ordinary contract of employment whereby, upon a summary discharge, the employee might be entitled to recover damages for perhaps a month or a year, or if he had performed work for his employer before receiving notice of the discharge, might be entitled to recover on a quantum meruit. What we have before us is the right of this employee to the security and tenure of civil service. Can that be predicated upon his reporting for work and signing the time sheets on February 7th? The probationary period is designed to sift out the employee who is not fit or suited to his employment before he comes within the rigid security of the Civil Service Act, even though he may have passed the examination. In that respect the Act is controlling and provides only that two things need be done: that the department head report the reason for the employee's discharge to the Civil Service Commission, and that the Commission consent thereto during the period of probation. If these two formal matters have been complied with, the employee's discharge is effective. There can be no doubt that they were and hence his discharge was effective February 4.

Two cases involving civil service support the position of defendants. Marasco v. Morse, 22 N.Y.S.2d 315, and Dalton v. Darlington, 108 N.Y.S. 626. In the Marasco case the probationary period expired May 15, 1940, but the discharge was made effective as of noon May 16 in order that the employee might perform certain services in connection with the keeping of accounts. The statute provided that "if the conduct, capacity and fitness of the probationer are satisfactory to the appointing officer, his retention in the service after the end of such term shall be equivalent to perma-

nent appointment, but if his conduct, capacity or fitness be not satisfactory, he may be discharged at the end of such term." The court held that the retention of the employee for an extra half-day did not constitute his retention in the service after the end of the probationary term. They quoted with approval from Dalton v. Darlington, supra, where mandamus was sought to compel the restoration of an employee under a rule which provided that a probationer should be notified at the end of the period of probation if he were not retained. The probationary period expired October 15 but the plaintiff did not receive such notice until October 18. A letter was addressed to him on the 15th advising him that he would not be retained in the department after the end of his probationary period. The letter was not delivered to the employee because he was performing duties outside of the city, and it was not until October 17 that he was sent a telegram requiring him to report at the office of the bureau at once. On October 18 he did report and was advised that his services were no longer required. The court in the Dalton case said p. 627, 628:

"In considering this question it must not be overlooked that the primary purpose of civil service laws and rules is to promote the good of the public service, and that purpose is not to be frustrated by technical or narrow constructions. The purpose of the probationary period is to enable the appointing officer to determine whether a permanent appointment is desirable. That question is left solely to his judgment, and he has the whole probationary period in which to decide it."

Plaintiff has cited two cases, neither of which support his position. The first, In Re Public Ledger, 63 F. Supp. 1008, is a case in which members of a union sued for severance pay. There was no question of civil service tenure, such as is here involved. We see nothing in that case which throws any light on the

question of interpretation of statutes and rules with respect to civil service. The second case is Bodmer v. Police Mutual Aid Assn., 94 Utah 450, 78 P.2d 640 in which a claim for death benefits was involved, and the question was whether or not a letter addressed to an employee was actually received by him. The court held that it was not necessary for a discharge to be effective that it be communicated to the employee and understood or realized by him at the time of the discharge. The court said: "In some cases it might be impossible to do so. He might leave for parts unknown. . . ."

It is urged by plaintiff that his discharge was in violation of Sec. 6, Rule II of the Commission, under which he says he was entitled to a hearing. This section is as follows:

"Section 6. Disqualifications. Proof of false statements made in any application or in any experience rating sheet or other statement given in an examination or of the violation of any statute or of any rule, regulation or instruction of the Commission pertaining to an examination, or of bad character, dissolute habits, immoral conduct, or of dismissal for cause from any public service shall be grounds for excluding an applicant from any examination, or for omission or removal from an eligible register, or for dismissal from the service after certification, provided that any such applicant or eligible or appointee shall be given an opportunity to be heard in his own defense before final action by the Commission, provided, however, that no provision of this Section 6 shall have any application to the discharge during the period of probation provided for in Section 10 of the Civil Service Act of persons appointed to the classified service pursuant to such Section 10."

The last proviso, explicitly stating that Section 6 should have no application to discharge during probation, was added by amendment on November 19,

352

1953. The draftsman apparently did not conform the entire section with precision. We must bear in mind that we are dealing with documents prepared by a lay body. The intention is clear beyond cavil—a probationer discharged during the period of probation is not entitled to a hearing.

Plaintiff cites People ex rel. Vestuto v. O'Connor, 351 Ill. App. 539. That case was decided before the adoption of the amendment of November 19, 1953, and hence is not relevant here. To hold that plaintiff was entitled to a hearing would be to negate the purpose of the probationary period. It would give probationers the practical equivalent of civil service tenure. In this case it appears that the Civil Service Commission did give plaintiff an opportunity to explain, but in any event it is not a matter in which courts can exercise jurisdiction.

The judgment is reversed and the cause is remanded with directions to sustain the motion to strike and to dismiss the suit.

Judgment reversed and cause remanded with directions.

ROBSON, P. J. and McCORMICK, J., concur.