THE PEOPLE *ex rel.* DAN KREDA *et al.*, Plaintiffs-Appellants, *v.* JOSEPH FITZGERALD, Building Commissioner of the City of Chicago, *et al.*, Defendants-Appellees.

(No. 60618;

First District (5th Division)—October 24, 1975.

210

Samuel E. Hirsch, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Lucia T. Thomas, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order refusing to issue a writ of mandamus and an injunction seeking (1) to direct the Building and Zoning Department (hereafter defendants) to take the necessary action to issue a permit to plaintiff for the building of an auto laundry; and (2) to order defendants to approve plans for the erection of a car washing facility.

It appears from the testimony of Fred Pecora, president of an engineering company hired by plaintiff to construct a car wash building on plaintiff's property, that he presented plans[1] to the City of Chicago Zoning Department which "show a car wash building approximately 25 foot [sic] by 65 foot [sic] along with a service station." He testified also that the plans provided for a conveyor system for the washing of only one car at a time and that they also showed a service station house, two gasoline islands for the fuel pumps, and a gasoline island house.

The record indicates that plaintiff's property was zoned C—1—1, and the permitted uses for such property include those allowed in a B—4 to B—5 district. (Municipal Code of Chicago 1972, ch. 194A, par. 9.3—1B (1).) One of such uses is the following:

"Automobile Service Stations—for the retail sale and dispensing of fuel, lubricants, tires, batteries, accessories and supplies including installation and minor services customarily incidental thereto. Facilities for chassis and gear lubrication and for washing of not more than two vehicles, are permitted only if enclosed in a building."

An auto laundry is distinguished from a service station and constitutes a special use in both B and C zones. It is defined as follows:

"An 'auto laundry' is a building, or portion thereof, containing facilities for washing more than two automobiles using production line methods with a chain conveyor, blower, steam cleaning device, or other mechanical devices."

The record discloses that the Zoning Department considered plaintiff's application to be for an auto laundry and, because there was no provision for the washing of more than two vehicles simultaneously, the Department determined there was a violation of the ordinance and refused a special use permit for an auto laundry. The Zoning Board of Appeals upheld that decision.

Thereafter, plaintiff filed the instant suit for mandamus and injunction. In his second amended complaint he asked (1) "that defendants be directed to issue the necessary permits so that he could secure the

---

[1] The plans and other exhibits which were received in evidence have not been included in the record on appeal.

proper permit for the building of an auto laundry"; and (2) that a mandatory injunction issue ordering defendants "to approve the plans submitted." In this complaint the events outlined above relative to his application for a permit were set forth, and it was further alleged that from 1969 to 1972 some 48 car wash units were installed in the City of Chicago which were incapable of washing more than two cars and that of the 48 units built, six units located in C zone districts were required to receive special use permits, five were constructed in M zone districts which did not require special use zoning, and the remaining 37 units were not classified by the Commission as auto laundries and thus not required to receive special use permits from the Zoning Board.

Evidence supporting these allegations was adduced at trial. However, on cross-examination it was established that of the 37 units operating car washes without special use permits, all but one were connected with automobile service stations and thus could properly contain facilities "for washing of not more than two vehicles.[2]

The trial court found that the pertinent zoning provisions were constitutional and, because plaintiff had failed to prove the material allegation of its complaint, that he was not entitled to the relief sought.

OPINION

Initially, we note that the application for a permit allegedly filed by plaintiff does not appear in the record nor have we been provided any of the documents presented before the Zoning Department or the Board of Appeals. There is attached, however, to plaintiff's complaint, as an exhibit, the formal notification to him by the zoning administrator that his application for a special use permit for an auto laundry was not approved, for the reason that it did not conform to the requirements of the ordinance.

We construe plaintiff's attack upon the ordinances as follows: (1) The limitation of the special use "auto laundry" to those facilities capable of washing more than two automobiles is arbitrary and unreasonable; and (2) the facility proposed by plaintiff for washing of only one car at a time was a permitted use for which no special use approval was required.

■■ We must note the posture of the cause before us. The application for a special use was presented to defendants and denied. An appeal was taken to the Board of Zoning Appeals which, in its final administrative decision, also denied the special use. Our law provides that all final administrative decisions of zoning boards of appeals shall be subject to judicial review pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—13.) Where the Act applies, it is the

---

[2] Municipal Code of Chicago 1972, ch. 194A, par. 8.3—4B(5).

sole and exclusive method for obtaining judicial review of an administrative decision. (Ill. Rev. Stat. 1973, ch. 110, par. 265; *Broccolo v. Village of Skokie*, 14 Ill.App.3d 27, 302 N.E.2d 74.) One recognized exception to this rule is that prior resort to the channels established by the Administrative Review Act is unnecessary where the ordinance or statute is challenged as being invalid on its face. This exception is stated in *Bank of Lyons v. County of Cook*, 13 Ill.2d 493 at 495, 150 N.E.2d 97, wherein the Supreme Court reaffirmed and explicated its previous ruling in *Bright v. City of Evanston*, 10 Ill.2d 178, 139 N.E.2d 270, that:

> "[W]here an ordinance is alleged to be invalid in its application to a particular piece of property, the owner must first pursue available administrative remedies. The distinction was recognized [in *Bright*] between an ordinance or statute invalid in its terms and one which is invalid only in its application. Where the alleged constitutional infirmity is to be found in its terms, prior application for administrative relief is unnecessary. [Citation.] On the other hand, where it is alleged that a statute valid upon its face is applied in a discriminatory or arbitrary manner, the rule generally prevails that recourse must be had in the first instance to the appropriate administrative board."

We consider plaintiff's first contention as an attack upon the validity of the ordinance in its terms and therefore properly before us.

■■ Special use techniques as a means of land use control have been approved in Illinois. (*Kotrich v. County of Du Page*, 19 Ill.2d 181, 166 N.E.2d 601.) Their application constitutes a means of enabling zoning authorities to deal more effectively with uses which "can not be categorized in any given use zone without the danger of excluding beneficial uses or including dangerous ones." (*Kotrich*, at 185.) The classification of property for municipal zoning purposes, and the size, extent and boundaries of zones are legislative rather than judicial matters and, as such, are clothed with a presumption of validity. (*Trendel v. County of Cook*, 27 Ill.2d 155, 188 N.E.2d 668, 10 Ill. L.&Pr. *Cities, Villages, etc.* § 1150 (1955).) A classification which is not purely arbitrary and is reasonably adapted to secure the purpose for which it was intended will not be disturbed unless it can be clearly seen that there is no fair reason for the distinction made. (*Ronda Realty Corp. v. Lawton*, 414 Ill. 313, 111 N.E.2d 310; *Stearns v. City of Chicago*, 368 Ill. 112, 13 N.E.2d 63.) Thus, a court will not interfere with a zoning classification where its reasonableness is fairly debatable. (*Lake County v. MacNeal*, 24 Ill.2d 253, 181 N.E.2d 85) or where there exists room for a fair difference of opinion concerning the reasonableness of the classification. *Fox v. City of Springfield*, 10 Ill.2d 198, 139 N.E.2d 732.

■■ ˙ Here, we believe the zoning ordinance limiting use as an auto laundry to a facility for the washing of more than two automobiles is a reasonable classification, especially when viewed in conjunction with the permitted use of automobile service stations wherein facilities are allowed for the washing of not more than two vehicles simultaneously. Naturally, special treatment and special consideration is required with a larger facility since it could reasonably be expected to have a more significant impact upon the district or area in which it is located. We see no reason to doubt the validity of the line of demarcation between the two classifications and thus agree with the trial court's finding that the zoning ordinance limitation on auto laundries to facilities for washing more than two automobiles simultaneously is valid. The difference in size between the two types of facilities would seem to constitute a fair reason for the distinction made and thus is not arbitrary and unreasonable. *Fox; Lake County.*

Inasmuch as a party seeking a special use permit has the burden of proving that the proposed use will meet all the standards required by the ordinance (*Coston Chapel A.M.E. Church v. Chaddick*, 9 Ill.App.3d 321, 292 N.E.2d 215; *Somerset House, Inc. v. Board of Appeals*, 131 Ill. App.2d 569, 266 N.E.2d 508) and because the proposed plans here, as testified to by plaintiff's witness Pecora, did not qualify under the definition of auto laundry as a unit capable of washing more than two automobiles simultaneously, we believe the trial court properly refused to order the issuance of a special use permit as an auto laundry.

■■ Plaintiff's second contention is that his proposed facility was not for an auto laundry but for a car wash, which he maintains was a permitted use under section B—4.1—5 (set forth above, entitled Automobile Service Stations). He argues that the washing of not more than two vehicles could be permitted by the last sentence of that section, as follows:

> "Facilities for chassis and gear lubrication and for washing of not more than two vehicles, are permitted only if enclosed in a building."

To refuse a permit under that sentence would, according to plaintiff, mean that he could not obtain a permit for a facility washing not more than two cars unless there are facilities for the sale of gasoline. Such a construction, he says, would be in violation of his fourteenth amendment rights.

We consider this argument to be an objection that the ordinance, valid on its face, is applied in a discriminatory manner. As such, this contention should first seek recourse through the proper administrative and judicial channels (*Bank of Lyons*), because it is not a matter attack-

ing the validity of an ordinance in its terms. In fact, plaintiff urges that the ordinance regulating automobile service stations is valid and should include his proposed facility within its scope. He objects to the fact that it was not so included and this, we believe, contests the manner or method of application of the ordinance and does not reach its textual validity. As such, this objection is not properly presented in a mandamus or mandatory injunction action.

■■ In any event, the record contains no formal application for either a special use permit as an auto laundry or for a car wash under the automobile service station section. In plaintiff's second amended complaint, he states that "he applied to the Zoning Appeal Board for permission (as if the use requested were a special use and not a permitted use), but the Zoning Appeal Board refused to grant him the special use." This application as a special use; i.e., auto laundry, appears from the record to be the only application ever made. It does seem that a viable argument might be presented that there is no rational distinction between, on the one hand, the permitted use in a C1-1 zone of an automobile service station with facilities for dispensing fuel and the washing of not more than two vehicles simultaneously and, on the other hand, a car wash alone without any facilities for dispensing fuel or rendering other auto services. (See Frost v. Village of Glen Ellyn, 30 Ill.2d 241, 195 N.E.2d 616.) However, there is no indication in this record that such theory was ever presented to the Zoning Department or to the Board of Appeals. In fact, the very plans allegedly submitted to defendants and upon which plaintiff asks this court to order that a permit issue have not been included in the record before us. In his second amended complaint, plaintiff also asks that a mandatory injunction issue ordering defendants to approve the plans submitted and states that they will be produced in open court because they are too bulky to attach to the complaint. It would appear that the plans were also too bulky to include in the record on appeal, for they have not been presented for our review. Under such circumstances, as stated in Solomon v. City of Evanston, 29 Ill.App.3d 782, 787, 331 N.E.2d 380, 384-85:

> "This court will not reverse on speculation and conjecture. Any doubt arising from the incompleteness of the record will be resolved against the appellant. (Brewer v. Brown, 126 Ill.App.2d 69, 261 N.E.2d 483.) It is established that on appeal the party claiming error has the burden of establishing any irregularities, and one who seeks to reverse a decree carries the burden of showing that it is erroneous."

Here, as stated above, there is no indication that any application for a car wash other than as an auto laundry was ever made. The applica-

tion for an auto laundry was properly denied. That is the only matter presented in the record before this court, and we cannot speculate either as to what the plans might have shown or whether an application was made for a car wash permit under the automobile service station section.

In a similar vein, for this court to order a writ of mandamus to issue the plaintiff must show a clear legal right to the relief sought. (*La Salle National Bank v. Village of Riverdale*, 16 Ill.2d 151, 157 N.E.2d 7; *People ex rel. Heffernan v. Smukal*, 13 Ill.App.2d 342, 142 N.E.2d 133; 26 Ill. L. & Pr. *Mandamus* § 32 (1956).) We have no record of the type of application made or the nature of the plans submitted other than from facts gleaned from the testimony of the witnesses presented at trial, from which we cannot say that plaintiff established in the trial court a clear legal right either to a special use permit as an auto laundry or to the use of a car wash facility under the Automobile Service Stations section (9.3—1B(1)) of the Zoning Code. Thus, on the record presented us, the judgment of the trial court must be affirmed.

Affirmed.

BARRETT, P. J., and DRUCKER, J., concur.