STATE of Missouri ex rel. Weldon WILHOIT, Bradley Jones, and Ronald Walker, Relators,

v.

The Honorable William Camm SEAY, Circuit Court of Crawford County, Missouri, Circuit Judge, Division 42, Respondent.

No. 28645.

Missouri Court of Appeals, Southern District, Division Two.

March 24, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Jefferson City, for relators.

John D. Beger, Brendon J. Fox, Rolla, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

Sean Wood sued individually Weldon Wilhoit, Bradley Jones, and Ronald Walker (collectively, "Relators"), under 42 U.S.C. § 1983, for civil rights violations that allegedly arose during a disciplinary action against him by the Missouri State Highway Patrol. In response to Wood's allegations, Relators filed a motion for summary judgment with the circuit court, contending that they were immune from suit under qualified immunity, however, the circuit court denied Relators' motion. Relators requested from this Court a preliminary writ of prohibition on August 6, 2007, which was granted on September 6, 2007. Relators now seek to make that writ of prohibition absolute on the theory that each of the above-named Relators have qualified immunity from suit. We agree and make absolute the writ of prohibition with directions for the circuit court to dismiss the suit against Wilhoit, Jones, and Walker.

■ "Public officials are provided qualified immunity for their official acts 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Foremost Ins. Co. v. Public Service Com'n of Missouri*, 985 S.W.2d 793, 796 (Mo.App. W.D.1998) (*quoting Rustici v. Weidemeyer*, 673 S.W.2d 762, 772 (Mo. banc 1984)). It is appropriate to grant a writ of prohibition where defendant is immune from suit as a matter of law and the trial court refuses to grant summary judgment. *State ex rel. Missouri Highway and Transp. Com'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998). This is appropriate because "[q]ualified immunity is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Scott v. Harris*, — U.S. —, —, 127 S.Ct. 1769, 1774, n. 2, 167 L.Ed.2d 686 (2007) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Where the facts are uncontested and the trial court wrongly decides an issue as a matter

of law and thereby deprives a party of an absolute defense, prohibition is particularly appropriate. *State ex rel. Feldman v. Lasky,* 879 S.W.2d 783, 784–85 (Mo.App. E.D. 1994).

■ After a summary judgment based on qualified immunity is denied, this Court applies the same standard of review as for a final order granting summary judgment. *Dierker,* 961 S.W.2d at 60. The record is reviewed de novo in the light most favorable to the party against whom the judgment is sought. *Id.*

## STATEMENT OF FACTS

Sean Wood was employed as a trooper with the Missouri State Highway Patrol beginning January 1, 1997. On September 8, 1997, Wood allegedly subjected M.B. to two separate acts of sexual contact by the use of forcible compulsion. At the time of the alleged incident Wood was a full-time employee of the Missouri State Highway Patrol and, as such, was subject to all rules and regulations for employees of the Missouri State Highway Patrol. On September 28, 2000, Wood was charged with violating specific General Orders of the Missouri State Highway Patrol as a result of the alleged September 8, 1997 incident. Thereafter, in accordance with section 43.150,[1] an administrative hearing was scheduled before the Disciplinary Board for October 11, 2000, by a personal order issued by Colonel Wilhoit, acting in his official capacity as Superintendent of the Missouri State Highway Patrol. Wood received notice of the scheduled hearing on September 28, 2000.

Before the hearing, an investigation was conducted by the Missouri State Highway Patrol; on September 11, 2000, Wood was interviewed, as part of an internal affairs investigation, by Captains Walker and Jones, of the Missouri State Highway Patrol, about the allegations made by M.B. Prior to the interview, Wood was advised of his *Garrity*[2] warnings and Wood's counsel was present during the interview. Neither Walker nor Jones testified in the criminal case against Wood, nor provided information to the investigators or prosecutors in that case regarding their interview of Wood.

On October 6, 2000, Wood requested a continuance of the disciplinary hearing so that he could take depositions related to his defense, however, the continuance was denied by Superintendent Wilhoit, and the hearing was held as scheduled. Wood knew about the hearing, but did not attend it and offered no reason for not attending. Although Wood submitted his resignation before the hearing, expecting it to be accepted, it was not. After the hearing, the Disciplinary Board issued written findings of fact and conclusions of law finding that on September 8, 1997, Wood subjected M.B. to two separate acts of sexual contact by the use of forcible compulsion.

In addition to the hearing before the Disciplinary Board, on July 26, 2000, the Director of the Department of Public Safety filed a complaint with the Administrative Hearing Commission seeking to discipline the peace officer certification of Wood pursuant to Chapter 590 RSMo.[3] A hearing was held before the Administrative Hearing Commission on January 11, 2002. Wood did not appear at that hearing either. On January 28, 2002, the Administrative Hearing Commission issued

---

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

3. Wood was also charged with two counts of sexual abuse, class C felonies, in violation of section 566.100, and acquitted in the Circuit Court of Greene County, Missouri.

an Order finding that on September 8, 1997, Wood "subjected M.B. to sexual assault at her residence by physically overpowering her and touching her breasts and genitals without her consent." Regarding a second incident on February 8, 2000, where Wood allegedly supplied alcohol to a minor and subsequently lied about it to Springfield Police Department investigators, the Administrative Hearing Commission found that "[o]n February 23, 2000, Wood provided the Springfield Police Department with a signed statement, which stated that it was a record of evidence, whereby Wood intentionally lied in a deliberate attempt to conceal his actions of February 8, 2000." Wood did not appeal from the decision of the Administrative Hearing Commission, but did bring the pending lawsuit against Relators.

## QUALIFIED IMMUNITY

Wood claimed in his original lawsuit that Wilhoit violated his constitutional rights by denying him due process of the law when Wilhoit denied Wood's request for a continuance of his disciplinary hearing on October 6, 2000. He further alleged that Walker and Jones violated his constitutional rights when Wood was ordered to present himself on the morning of September 11, 2000, for an administrative interview and, during the course of that interview, he was forced to divulge matters allegedly protected by attorney-client privilege. The claims against Wilhoit, Walker and Jones are initially reviewed to determine whether the alleged facts show that any of their conduct violated Wood's constitutional rights. An officer's conduct is shielded by qualified immunity when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances. *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case." *Ibid.*

*Scott v. Harris,* —— U.S. ——, ——, 127 S.Ct. 1769, 1774 (2007). The purpose of this rule is to excuse the liability of an officer who makes a reasonable mistake in the exercise of his official duties. *Foremost Ins. Co. v. Public Service Com'n of Missouri,* 985 S.W.2d 793, 796 (Mo.App. W.D.1998). Qualified immunity does not apply, however, to those discretionary acts done in bad faith or with malice. *Davis v. Board of Educ. of City of St. Louis,* 963 S.W.2d 679, 688–89 (Mo.App. E.D.1998).

## DUE PROCESS CLAIM AGAINST WILHOIT

The Fourteenth Amendment to the United States Constitution and Article 1 § 10 of the Missouri Constitution protect against the deprivation of life, liberty and property without due process of law. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (*quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Administrative agencies acting in an adjudicative capacity must adhere to the requirements of procedural due process. *Fitzgerald v. City of Maryland Heights,* 796 S.W.2d 52, 59 (Mo.App. E.D.

1990). In order to invoke the mandates of due process under these clauses, a person must have been deprived of a property interest recognized by the due process clauses of the state and federal constitutions. *Moore v. Board of Educ. of Fulton School*, 836 S.W.2d 943, 947 (Mo. banc 1992).

■ Wood has alleged a deprivation of his right to continued employment. Whether a state employee has a protected property right in continued employment is initially a matter of state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Where the state affords an employee the right to a hearing and that he can only be discharged for cause, the employee's interest is protected. *See Skeets v. Johnson, et al.*, 805 F.2d 767, 771–74 (8th Cir.1986). In Missouri, a highway patrolman, after serving a probationary period of one year, is subject to removal, reduction in rank or suspension of more than three days "only for cause after a formal charge has been filed in writing" and "upon a finding by a majority of a board of six members randomly selected." Section 43.150. Since Wood had passed his one-year probationary period, Wood had a right to what is commonly referred to as "procedural due process" in his continued employment with the Missouri State Highway Patrol; therefore, we turn to the requirements of due process to determine whether Wood has properly alleged facts which amount to a constitutional violation.

■ Notice and the opportunity to respond before being discharged are the essential requirements of procedural due process. *Heinen v. Brewer*, 171 F.3d 612, 614 (8th Cir.1999). Wood does not claim that he was denied any notice or the opportunity to be heard at the hearing. In fact, Wood could not argue this, as the record contains Wood's acknowledgment of his receipt of notice and the record is clear that Wood chose not to be present at the hearing. Instead, Wood argues that he was deprived of his due process when Wilhoit denied his request for a continuance.

■ "It has been held in numerous decisions, and analogously in administrative hearings, that a continuance rests in the hearing officer's discretion." *Becker v. Missouri Dept. of Corrections and Human Services*, 780 S.W.2d 72, 78 (Mo.App. E.D. 1989) (*citing* 2 Am.Jur.2d *Administrative Law*, § 426 at 236 (1962)). The discretion to grant a continuance is broad, and the appellate court will defer to the decision of the agency and such ruling will not be set aside unless it is shown that the denial of a continuance is abused by an arbitrary or capricious ruling. *Id.* (*citing Missouri Public Service Co. v. Argenbright*, 457 S.W.2d 777, 785 (Mo. banc 1970)). In this case, the Disciplinary Board chose not to grant the continuance and the hearing was held as scheduled. The procedure of the Disciplinary Board clearly indicates that hearings are consistently held shortly after notice is given. Specifically, section 43.150 states, "[w]ithin thirty days after the petition is filed . . . the board shall conduct a hearing." Section 43.150. The statutes governing the disciplinary procedure comport with due process because they provide for meaningful notice and an opportunity to be heard. *See Bartlett v. Fisher*, 972 F.2d 911, 915 (8th Cir.1992) (noting that public employees with a property interest in their positions are entitled to notice and an opportunity to be heard prior to discharge) (*citing Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). A process which allows a defendant notice and an opportunity to be heard before the formal charges are initiated and a full evidentiary hearing before the Disciplinary Board "was obviously far more

'elaborate' ... than is constitutionally required." *Id.* Here, Wood was given actual notice of the factual basis for the disciplinary hearing prior to the hearing and, although he chose not to be present, he was given notice of when a hearing would be held so that he could present a defense. Wood failed to supply any reason why he could not be present. The denial of the continuance was not an abuse of discretion. We find no deprivation of Wood's due process rights due to Wilhoit's refusal to grant a continuance. Because Wood has failed to allege facts that amount to a valid constitutional violation, Wilhoit is protected from suit by his qualified immunity.

## SIXTH AMENDMENT CLAIM AGAINST JONES AND WALKER

In his claim against Jones and Walker, Wood claims the highway patrol investigators violated his Sixth Amendment right to counsel during an interview that took place on September 11, 2000. Again, both Jones and Walker are public officials entitled to qualified immunity unless their immunity was lost through conduct violating a clearly established statutory or constitutional right of which a reasonable person would have known. *Hinshaw v. Smith*, 436 F.3d 997, 1004 (8th Cir.2006). Therefore, the initial test for whether or not qualified immunity has been lost is whether or not a proper constitutional violation has been alleged. *Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007). Wood's claim is that, over the objection of counsel, Jones and Walker caused Wood to reveal "attorney-client information." We find that Wood has failed to properly allege a factual basis for a constitutional violation.

The Sixth Amendment to the Constitution of the United States guarantees an accused in a state criminal proceeding the right to the assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335, 342–43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Escobedo v. Illinois*, 378 U.S. 478, 487, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The Sixth Amendment guarantees not only the presence of counsel, but also the *effective assistance* of counsel. *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Wood was represented by legal counsel, John Berger, at the interview in question, who actively asserted various rights on behalf of Wood.

The interview was transcribed in its entirety and made a part of the record by Wood. The portion of the interview that Wood claims was in violation of his Sixth Amendment rights occurred when the investigators asked Wood why the alleged victim of the sexual assault would fabricate her charge against him:

Mr. Walker: As it relates to court I know you obviously you sat through and heard what she had to say, why would she say that?

Mr. Wood: I don't have a clue why. Other than jumping on a band wagon from the media hype down there. I don't know.

Mr. Walker: Why if she went to a psychologists [sic] the next day and reported this incident and then went to the Rape Crisis Center why would she do that?

Mr. Berger: I am going to interpose an objection to instruct him not to answer ...

Mr. Walker: This is ... this is ...

Mr. Berger: No, no this is [sic] involves attorney[-]client privilege at this point.

Mr. Walker: No, no sir this is information ...

Mr. Berger: I appreciate that. We have discussed theories about why she

might do that. I am instructing him not to say anything about which we have talked.

Mr. Walker: That's fine. Brad.

Mr. Jones: Show him your order to answer the question. This is an administrative interview and it has nothing to do with [sic] criminal case and in fact any statements you say cannot be used in the criminal case.

Mr. Berger: Well let me just tell you gentlemen that he can follow the order and he should follow the order which be [sic] grounds for a dismissal of the charges because now you are involving attorney[-]client privilege. Discussions we've had about this very subject why she might have been making these false allegations.

Mr. Walker: We weren't included in those discussions. From the information ...

Mr. Berger: You [sic] darn right you weren't included. That's attorney[-]client. Now you are ordering him to divulge attorney[-]client privilege.

Mr. Walker: We are ordering him to answer.

Mr. Berger: By issuing that order you are going to get this charge dismissed so I assume that is your intent.

Mr. Wood: What was the question?

Mr. Walker: The question is if you have any thoughts as to why your first response was that she came forward because of the media hype.

Mr. Wood: I don't know that.

Mr. Walker: Do you have any idea why she would do that? Why would she do those things in the few days that followed that encounter?

Mr. Wood: Unless her boyfriend caught her, saw me over there, I don't know. I don't have ... I could not begin to guess why [she] did this. Uh, her and I have always got along so I couldn't tell you why.

Although Wood claims he was denied the assistance of counsel, his attorney was present at the time of the alleged violation. Counsel was given every opportunity to object and make a record of any objections. Wood's first argument has no merit.

Wood next argues that, by being forced to reveal matters discussed with his attorney, his constitutional rights were violated. Without addressing whether the questioning infringed upon his attorney-client privilege, Wood failed to allege that he actually disclosed any attorney-client privileged information. Wood claimed, in response to what his opinion of the victim's motive for the claim was, that he did not know. When pressed if he had any idea why the victim behaved as she had, he proffered a guess. Furthermore, the interview was not a part of a criminal proceeding and the two interviewers did not testify at his criminal trial. Even if Wood was "forced" to reveal his "trial strategy," he was able to successfully employ that claimed motive for making false allegations at his criminal trial, where he was acquitted of the charged crimes.

We fail to see a clearly established constitutional right that Wood can contend was violated. Wood, therefore, has failed to allege facts that adequately prove that Jones and Walker lost their qualified immunity by violating a clearly established statutory or constitutional right. The questioning concerning possible motives of the victim for her claims did not violate Wood's constitutional rights; Jones and Walker are also protected from suit by qualified immunity.

We make absolute the writ of prohibition and remand this cause to the circuit

court to dismiss the action against Wilhoit, Jones and Walker.

LYNCH, C.J., BURRELL, J., concur.