**Scot FRANSK, Appellant,**

v.

**CURATORS OF the UNIVERSITY OF MISSOURI, Blake Danuser, Ken Hutchinson, and Cindy Strine, Respondents.**

**No. WD 69173.**

Missouri Court of Appeals,
Western District.

Nov. 12, 2008.

---

George S. Smith, Columbia, for Appellant.

Before THOMAS H. NEWTON, C.J., JOSEPH M. ELLIS, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Scot Fransk appeals the circuit court's judgment dismissing his petition for declaratory relief and for damages under 42 U.S.C. § 1983 for alleged violations of due process. Fransk asserts that the Curators of the University of Missouri (University)[1] summarily discharged him from his employment with the University on the first day after his probationary period ended. He contends that he was entitled to due process because he had a property interest in his employment and was entitled to all the rights and privileges granted other non-probationary employees, including the right to challenge the circumstances of his summary discharge through the grievance procedures employed by the University.

He also contends that the circuit court erred in concluding that the University clearly intended that his employment not be continued beyond the probationary period because intent is not a "legally defensible ground for missing an employer-imposed deadline." Finally, Fransk asserts that, because the University initially entertained his grievance, the University is equitably estopped from denying his right to continue in the grievance process. We affirm the circuit court's judgment dismissing Fransk's petition.

■ We review the circuit court's granting of a motion to dismiss de novo. *Weems v. Montgomery*, 126 S.W.3d 479, 484 (Mo.App.2004). "When reviewing dismissal of a petition, a court allows a pleading its broadest intendment, treats all facts alleged as true, construes allegations favorably to plaintiff and determines whether averments invoke principles of substantive law entitling plaintiff to relief." *Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003).

Fransk was hired by the University as the Assistant Director of Sports and Competition on February 16, 2006. At the time he was hired, Fransk's employment was subject to a six-month probationary period, which would expire on August 15, 2006. On August 14, 2006, Fransk was informed that his probationary period was being extended by three months, as allowed by the University's Human Resources Policy Manual. The University's policy manual, however, provides that an employee may not remain on probation for longer than nine months; therefore, pursuant to that provision of the policy manu-

---

1. Fransk also named K. Blake Danuser, Associate Vice–President for Employee Relations and Designated University Grievance Representative, R. Kenneth Hutchinson, Vice–President of Human Resources, and Cindy Strine, Associate Director for Programs in the University's Department of Recreational Services and Facilities, in their official and individual capacities as defendants in this matter. For the ease of the reader, we refer to all of the named defendants collectively as the "University."

al, Fransk's extended probationary period would end on November 15, 2006.

On November 7, 2006, Cindy Strine, the Associate Director for Programs in the University's Department of Recreational Services, informed Fransk that his employment would be terminated and instructed him to go home and not to return to work. By letter dated November 7, 2006, Strine informed Fransk that his employment would not "be continued beyond the last day of [his] probationary period, November 16, 2006, due to the unsuccessful completion of [his] probationary period." Fransk also was told that his salary would be paid "up to and including the day of November 16, 2006." After November 7, 2006, Fransk did not report to work.

On November 17, 2006, Fransk filed a grievance against Strine alleging violations of the University's Human Resources Policy Manual. Fransk alleged that his probationary period ended on November 15, 2006, and that, because he remained on the University's payroll a day past when his probationary period ended, he became a non-probationary employee and was entitled to due process and to all rights and privileges granted other non-probationary employees.

On January 22, 2007, Karen Touzeau, Assistant Vice Chancellor for Human Resource Services and the Campus Grievance Representative, wrote a letter to Fransk responding to Fransk's purported grievance. Touzeau informed Fransk that the University clearly intended to release him during his probationary period but missed the date by one day. Touzeau found that Fransk was entitled to back pay from November 16, 2006, to the date of her decision. Touzeau concluded, however, that the University had "legitimate business reasons" for discharging Fransk and that Fransk was not entitled to reinstatement.

On January 31, 2007, Fransk attempted to appeal Touzeau's decision to K. Blake Danuser, the University's Associate Vice–President for Employee Relations. By letter dated February 22, 2007, Danuser denied Fransk's appeal on the ground that Fransk was a probationary employee and did not have access to the University's grievance procedure. Fransk then attempted to appeal Danuser's rejection of his grievance to R. Kenneth Hutchinson, the University's Vice–President of Human Resources. By letter dated April 30, 2007, Hutchinson denied Fransk's appeal on the ground that Fransk was not entitled to any such appeal because Fransk did not complete his probationary period and was not entitled to pursue a grievance.

Fransk then filed his petition and subsequently a first amended petition for declaratory judgment and damages against the University in the Circuit Court of Cole County. The amended petition contained two counts: Count I sought a declaratory judgment seeking the circuit court's determination that Fransk was entitled to challenge the circumstances of his discharge through the grievance procedures employed by the University, and Count II sought relief under 42 U.S.C. § 1983 for alleged violations of due process. The University filed a motion for change of venue to Boone County, and the circuit court transferred the case to the Circuit Court of Boone County on September 17, 2007. Thereafter, the University filed a motion to dismiss Fransk's amended petition. The University contended that (1) Fransk's Count I was actually a request for judicial review pursuant to the contested case provision of Chapter 536, RSMo, and that the circuit court lacked subject matter jurisdiction because Fransk's action was untimely; and (2) Fransk failed to state a claim upon which relief could be granted. On January 17, 2008, the circuit court sustained the University's motion to

dismiss Fransk's suit with prejudice. In dismissing Fransk's claim, the circuit court said:

> [T]he Court finds that on or about November 7, 2006[, Fransk] was notified that his employment would not be continued beyond the last day of his probational period … "due to unsuccessful completion of his probationary period." That said, notification was [sic] mistakenly stated that the last day of his probationary period was November 16, 2006 (rather than November 15, 2006); but that the intent was clear that his employment would not be continued beyond the probationary period; and that [Fransk] had no property rights in his employment.

Fransk appeals from that determination to this court.

█ Fransk asserts that the circuit court erred in granting the University's motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.[2] In particular, Fransk contends that the circuit court wrongfully ruled that he had no property interest in his employment with the University. He claims that, because he remained on the University's payroll for one day past when his probationary period ended, he was entitled to access the University's grievance procedures for regular, non-probationary employees and entitled to due process because he had a property interest in his employment. We disagree.

█ "The Fourteenth Amendment to the United States Constitution and Article 1 § 10 of the Missouri Constitution protect against the deprivation of life, liberty, and property without due process of law." *State ex rel. Wilhoit v. Seay,* 248 S.W.3d 135, 139 (Mo.App.2008). " 'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " *Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). To be entitled to due process, a person must have been deprived of a constitutionally protected property interest. *Id.,* 248 S.W.3d at 140; *Moore v. Bd. of Educ. of Fulton Pub. Sch.,* 836 S.W.2d 943, 947 (Mo. banc 1992), *cert. denied,* 507 U.S. 916, 113 S.Ct. 1270, 122 L.Ed.2d 666 (1993). Indeed, to prevail on a claim under 42 U.S.C. § 1983, a claimant must establish a protected property interest to which due process applies. *Furlong Cos. v. City of Kansas City,* 189 S.W.3d 157, 170 (Mo. banc 2006).

█ Whether or not a government employee "has a protected property right in continued employment is initially a matter of state law. Where the state affords an employee the right to a hearing and that he can only be discharged for cause, the employee's interest is protected." *Wilhoit,* 248 S.W.3d at 140 (citation omitted). However, no general right to continued public employment exists in Missouri, and "such a right must be shown to exist by statute, ordinance, regulation, or employment contract." *Schlientz v. Rock Twp. Ambulance Dist.,* 146 S.W.3d 404, 405 (Mo.App.2004). A property interest in public employment is based upon a "reasonable and legitimate expectation of con-

---

**2.** Because we find that the circuit court did not err in dismissing Fransk's first amended petition for failure to state a claim, we need not address whether or not the circuit court lacked subject matter jurisdiction over Count I of Fransk's amended petition. In Count I, Fransk sought a declaratory judgment that he was entitled to access the University's grievance procedures, and in Count II, he sought redress for the University's actions in depriving him access to the University's grievance procedures. Because of the reasons set forth in this opinion, Fransk failed to state a claim as to both counts.

tinued employment."[3] *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 803 (8th Cir.), *cert. denied,* 543 U.S. 956, 125 S.Ct. 436, 160 L.Ed.2d 318 (2004).

Fransk's claim that he was entitled to due process and the right to pursue a grievance under the University's policy manual hinges on his claim that he completed his probationary period and became a regular employee. The University's policy manual specifically states that termination of employment during the probationary period is not subject to the grievance procedure and that only a regular employee may process a grievance upon completion of his or her probationary period. University of Missouri Human Resources Policy Manual HR–109 and HR–502.

Fransk does not contend that he was entitled to pursue a grievance as a probationary employee or that he had a property interest in his employment as a probationary employee. His only basis for contending that he completed his probationary period and that he gained a property interest in his employment is his allegations that his probationary period ended on November 15, 2006, and that he was not terminated until November 16, 2006, and remained on the payroll until that date.

Remaining on the payroll for one day past his probationary period does not es-tablish that Fransk became a regular employee or that he obtained any property interest in his employment. Fransk acknowledges in his petition that, on November 7, 2006, he was told by Strine, the Associate Director for Programs in the University's Department of Recreational Services, that his employment would be terminated and that Strine "instructed him to go home and not to return to work." Fransk concedes that he did not return to work after November 7, 2006. Based on these facts conceded in his pleading and pursuant to the University's policy manual, Fransk did not have a reasonable and legitimate expectation of continued employment for the one day past the end of his probationary period.[4]

Although Strine's letter to Fransk informed him that his employment would not be continued beyond the last day of his probationary period, the letter erroneously noted that date as November 16 and not November 15. Because of this mistake, Fransk was also paid for one day past the end of his probationary period. Regardless of these errors, Fransk was still terminated while he was a probationary employee; he merely received an extra day's pay by mistake. We will not find a constitutionally protected property right based on inadvertence or technicalities.

Although Fransk relies on cases from other jurisdictions supporting his conten-

---

3.  Fransk asserts that this principle is not relevant to this appeal. We disagree. Whether or not Fransk had a reasonable and legitimate expectation of continued employment beyond his probationary period under the terms of the University's policy manual is precisely the issue before this court. The question is: Did Fransk have a legitimate and reasonable expectation of continued employment for the one day beyond the end of his probationary period? If that question is answered in the affirmative, then Fransk has a property interest in his employment and is entitled to access the University's grievance procedure. But, if that question is answered in the negative, Fransk was merely a probationary employee when he was terminated, and he has no property interest in his employment and is not entitled to access the University's grievance procedures.

4.  Even if the University had erroneously noted the wrong year for the termination instead of the wrong day, such error would not have conferred an expectation, let alone a reasonable expectation, of continued employment to Fransk.

tion that he had a protected property right in his employment, we are not persuaded by these cases. In particular, Fransk relies on *Wiles v. State Personnel Board*, 19 Cal.2d 344, 121 P.2d 673 (1942), and *Birdsall v. Carrillo*, 231 Cal.App.3d 1426, 282 Cal.Rptr. 504 (1991).[5] In *Wiles*, the petitioner was appointed by the California National Guard as a Personnel Record Officer on August 13, 1938, and his period of probationary service ended on February 12, 1939. 121 P.2d at 674, 676. The petitioner received a letter of rejection on February 10, 1939, which said "[e]ffective March 4, 1939," his services with the National Guard would be terminated. *Id.* at 676. The petitioner claimed that, although he was given notice of his termination prior to the end of his probationary period, the termination was not made effective until March 4, 1939, which was well after the last day of his probationary period, i.e. February 12, 1939. *Id.* He argued, therefore, that he became a permanent employee and was entitled to the procedures for dismissal under the California Civil Service Act. *Id.* In a plurality opinion, the *Wiles* court agreed and held that the petitioner's services were not terminated until after the final day of the probationary period. *Id.* The notice of the termination said that petitioner's services would be terminated "[e]ffective March 3, 1939." *Id.* The court concluded that although the National Guard may have intended an immediate termination, no such termination was accomplished by the notice given. *Id.*

In *Birdsall*, the petitioner was employed as a deputy coroner with a county coroner's office on June 16, 1988. 282 Cal. Rptr. at 505. The petitioner's probationary period for the coroner position was to end at 4:00 P.M. on December 13, 1988. *Id.* at 507. On December 13, 1988, the petitioner was given a letter notifying her that she would be removed from her position "[e]ffective after 5:00 p.m. on Wednesday, December 14, 1988[.]" *Id.* at 505. The petitioner claimed that, because her probationary period ended on December 13, 1988, at 4:00 P.M., she was a permanent employee and entitled to the procedural protections of a permanent employee. *Id.* at 505–06. The petitioner argued that, "unless a notice of termination actually takes effect during the probationary period, the employee is entitled to procedural protections of a permanent employee." *Id.* at 507. The *Birdsall* court begrudgingly agreed. The court relied on the *Wiles* decision in making its ruling, but the court noted that *Wiles* was decided by "a bare majority" and said that the posi-

5. For cases contrary to *Wiles* and *Birdsall, see Marasco v. Morse,* 9 Misc.2d 296, 22 N.Y.S.2d 315 (N.Y.Sup.Ct.1940), *aff'd by* 263 A.D. 1063, 34 N.Y.S.2d 823 (N.Y.A.D.1942), *aff'd by* 289 N.Y. 768, 46 N.E.2d 364 (1943), and *People ex rel. Heffernan v. Smykal,* 13 Ill. App.2d 342, 142 N.E.2d 133, 134 (1957). In *Marasco,* a New York State employee was employed in a probationary period that ended on May 15, 1940, and he was notified that he would be terminated at noon on May 16, 1940. *Marasco,* 22 N.Y.S.2d at 319–20. The *Marasco* court concluded that the employee was not a permanent appointee even though his employment continued for a few hours after the end of his probationary term. *Id.* at 322. In *Heffernan,* a public employee was employed in a probationary period that ended on February 5, 1955. *Heffernan,* 142 N.E.2d at 134. On February 4, 1955, his employer issued a letter terminating the employee's employment, but the employee did not receive the letter until February 7, 1955. *Id.* at 134–35. On February 7, the employee reported to work and learned for the first time about his discharge. *Id.* at 135. The *Heffernan* court rejected the employee's claim that he had completed his probationary period and was entitled to the protection of the state's civil service law. *Id.* at 137. The court concluded that the employee was terminated on February 4 and that the mere fact that the employee had reported for work and signed time sheets on February 7 did not mean he became entitled to civil service protection. *Id.* at 136.

tion taken by the three dissenting justices in *Wiles* was "more reasonable." *Id.* at 508 n. 4. "The dissenters concluded that a notice of rejection served on the employee within the probationary period was legally effective." *Id.* Nonetheless, the *Birdsall* court concluded that it was bound to follow the majority opinion in *Wiles. Id.* The court concluded that since the termination did not take effect until after the petitioner had completed her probationary period, the petitioner was entitled to all the procedural protections due to a permanent employee. *Id.* at 508.

Neither of these cases is instructive to the case at hand. In *Wiles,* the employee's termination was to become effective several weeks after the end of his probationary period. In *Birdsall,* there was no indication that the employee was actually removed from the workplace before the end of the probationary period, as occurred in this case. Moreover, in both *Wiles* and in *Birdsall,* the notice of the termination informed the employees that their terminations would be *effective* on a date certain without a mention of whether such was the last day of the employees' probationary periods. In Fransk's case, Fransk was notified that his employment would "not be continued beyond the last day of [his] extended probationary period" even though that pronouncement was followed by the wrong date for the end of his probationary period, i.e. November 16, 2006. Moreover, Fransk was instructed to go home and not to return to work, and he did not return to work after November 7, 2006, which was before the end of his probationary period. That the University paid him for one extra day past his probationary period was

merely an error that worked to Fransk's advantage in that he received an extra day's pay.[6]

■ Fransk also complains about the circuit court's finding that the University clearly intended that Fransk's employment not be continued beyond the probationary period. Fransk claims that intent is not a "legally defensible ground for missing an employer-imposed deadline." Regardless of whether the University intended that Fransk's employment not be continued beyond the probationary period, the actions taken by the University were sufficient to terminate Fransk's employment during his probationary period. Fransk was informed before the end of his probationary period that his employment would not be continued beyond the last day of his probationary period due to the unsuccessful completion of his probationary period; he was removed from the workplace before the end of his probationary period; and he did not return to work after his probationary period ended.

■ Finally, Fransk asserts that, because the University initially entertained his grievance, the University is equitably estopped from denying his right to continue in the grievance process. Fransk asserts this issue for the first time on appeal. He did not plead equitable estoppel in his petition, and he never presented the issue for the circuit court to decide. The issue, therefore, was not preserved for our review, and we will not consider an issue that was raised for the first time on appeal. *Gover v. Cleveland,* 299 S.W.2d 239, 243 (Mo.App.1957) (plaintiff could not present

---

6. Fransk points to provisions in the University's policy manual and staff handbook stating that terminated employees are entitled to pay from the date of the termination (last actual day of work) only and that employees will be removed from the payroll on the last day of actual work. These provisions do not suggest, however, that Fransk automatically became a regular employee when he stayed on the payroll one day past his probationary period.

**484**

equitable estoppel claim for relief for first time on appeal); *see also State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 129 (Mo. banc 2000) ("An issue that was never presented to or decided by the trial court is not preserved for appellate review.").

Under the terms of the University's policy manual, Fransk had no reasonable and legitimate expectations of continued employment with the University as he was told that his employment would not continue beyond the last day of his extended probationary period and that he should go home and not return to work. Because the University discharged Fransk at the end of his probationary period, Fransk was not entitled to challenge the circumstances of his summary discharge through the grievance procedures employed by the University. Moreover, Fransk did not have a constitutionally protected property interest in his employment and, therefore, was not entitled to due process as a probationary employee. The circuit court did not err in dismissing Fransk's first amended petition for declaratory judgment and for damages under 42 U.S.C. § 1983 for alleged violations of due process for failure to state a claim. We, therefore, affirm the circuit court's judgment.

All concur.