In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3265

MICHAEL A. BROOKS,

*Plaintiff-Appellant,*

*v.*

CITY OF AURORA, ILLINOIS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 4144—**David H. Coar**, *Judge.*

ARGUED FEBRUARY 17, 2011—DECIDED JULY 6, 2011

Before EASTERBROOK, *Chief Judge,* and RIPPLE and
TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Michael Brooks brought this
action under 42 U.S.C. § 1983 and Illinois law against
the City of Aurora and several municipal police offi-
cers. The complaint alleged that the officers violated
Mr. Brooks's rights under the Fourth Amendment and
state law when they arrested him for driving on a sus-
pended license and for resisting a peace officer. The
district court granted summary judgment in favor of the

defendants on the federal claims and dismissed the state law claims without prejudice. Mr. Brooks now appeals.

We affirm the judgment of the district court. Mr. Brooks's actions when the officers attempted to arrest him for driving on a suspended license gave them probable cause to believe that he was committing the crime of resisting a peace officer. Therefore, the seizure was valid regardless of whether Mr. Brooks was arrested for the traffic offense pursuant to a valid warrant. Further, controlling law at the time of the incident did not clearly establish that the use of pepper spray was unreasonable under the circumstances; thus, the officers are entitled to qualified immunity on Mr. Brooks's excessive force claim.

# I

# BACKGROUND

## A. Facts

On June 18, 2008, Aurora Police Department Officer George Lill and his partner, Officer Matthew Hix, were staking out a bakery that they suspected to be a drug front. At about 5:45 p.m., the officers noticed a silver Crown Victoria drive through the parking lot adjacent to the bakery. Although they caught only a glimpse of the driver, the officers both identified him as Mr. Brooks, whom they knew from their frequent patrols in and around Aurora's Maple Terrace housing projects. The officers never had seen Mr. Brooks drive

before (usually his wife drove), so they ran a search and learned that Mr. Brooks's driver's license was suspended.[1] Before they could follow up, however, they were called away from their stakeout to respond to a burglary. Officer Lill later filled out a traffic ticket and obtained a warrant for Mr. Brooks's arrest.

Three weeks later, on the evening of July 9, Officer Lill finally served the arrest warrant. Officer Hix was on vacation, but Officer Lill coordinated service of the warrant with Officers Garrett Wrobel and Douglas Rashkow, who were to approach Maple Terrace in a separate vehicle. Officer Lill arrived at Mr. Brooks's apartment first, where he found Mr. Brooks barbecuing with some friends and neighbors outside his apartment. His wife was inside.

As the barbecue was nearing its end, Officer Lill approached the gathering and asked Mr. Brooks to step aside so they could speak in private. The two men knew one another because Officer Lill often was assigned to patrol in and around Maple Terrace. Officer Lill asked Mr. Brooks if he knew that his driver's license was suspended, and Mr. Brooks said that he did. Officer Lill then informed Mr. Brooks that he had seen him driving three weeks earlier and that there was a warrant out for his arrest for driving on a suspended license. Mr. Brooks responded that he could not have been driving the car at that time because his car had not been working, but Officer Lill

---

[1] Mr. Brooks's driver's license has been suspended since 1993.

nevertheless told him that he was under arrest. Mr. Brooks stated that he would go with Officer Lill, but first he wanted to tell his wife to bring his wallet and identification to the police station. Mr. Brooks then "back-pedaled away from Lill to go to his window to call up to his wife. When asked why he was walking back away from Lill . . . , he stated, 'I'm walking because I want to know what the reason [for the arrest] was.'" R.27 ¶ 40 (internal citations omitted). Officer Lill followed in close pursuit.

At this point, Officers Wrobel and Rashkow arrived on the scene in a squad car, whose on-board video camera recorded most of what transpired thereafter.[2] The recording of the confrontation begins with the scene already in progress. In the opening shot, Mr. Brooks is backpedaling rapidly and moving his arms in what appears to be an attempt to bat away Officer Lill's hands. After a couple of seconds, Mr. Brooks stops, squares to face Officer Lill and sticks his arms out to his side in a "T". The camera moves away from the scene briefly as the squad car turns, but when the camera settles on the two men, Mr. Brooks has lowered his arms to stomach level and is facing Officer Lill. The officer holds a can of pepper spray in his right hand and has extended his left hand to Mr. Brooks's chest. A second later, Officer Lill fires a burst of pepper spray into Mr. Brooks's face. Mr. Brooks bends over and puts his

---

[2] The squad car's on-board camera captured the video of the scene, but it did not record any sound.

shirt to his face, attempting to wipe his eyes. Officer Lill approaches, accompanied by Officer Rashkow, who has exited the squad car. Four seconds after the first spray, Officer Lill applies a second burst. Mr. Brooks then falls over a lawn chair and lands facedown on the ground, incapacitated. The time between Mr. Brooks's backpedaling and his incapacitation is about seventeen seconds, the time between the backpedaling and the first burst of pepper spray, about ten.

After he had been immobilized, Mr. Brooks was arrested, transported to jail and charged with driving on a suspended license and resisting a peace officer in the performance of his duties.[3] He was acquitted of both charges in a bench trial.

Some of the details of what transpired remain in dispute. According to Mr. Brooks and several corroborating witnesses, whose version of events we are obliged to believe at the summary judgment stage, his Crown Victoria was broken down on June 18, so he could not have been driving when Officers Lill and Hix claimed to have seen him. Mr. Brooks presented a receipt for an auto part, purchased on June 19, which he says was necessary to make the car run again. In addition, he introduced evidence that he claims casts

---

[3] At the time of Mr. Brooks's arrest, 720 ILCS 5/31-1(a) provided: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor."

doubt on the ability of Officers Lill and Hix to have seen the Crown Victoria or its driver from their surveillance position in front of the bakery.

Mr. Brooks therefore was surprised when Officer Lill told him that he had been seen driving and that there was a warrant for his arrest. He also was surprised because he had spoken with Officer Lill a day or two before the arrest, and the subject of the warrant had not come up. Nevertheless, Mr. Brooks said, "Okay," but told Officer Lill that he was going to call through the window to his wife and ask her to bring his wallet and identification to the police station. R.24-3 at 59. Mr. Brooks then "back[]pedaled" away, *id.* at 61, but Officer Lill followed and told him that he was not going to tell anybody anything. Officer Lill attempted to grab Mr. Brooks's wrist, but Mr. Brooks evaded his grasp and raised his arms shoulder level into the air, saying, "What did I do?," and then Officer Lill "caught [him] by the arm, and . . . sprayed the spray." *Id.* at 61-62.[4] Mr. Brooks's testimony is unclear on precisely when Officer Lill informed him that he was under arrest, but at several points Mr. Brooks states that it occurred before he began backpedaling. He maintains, however, that he made his acquiescence to the arrest plain to Officer Lill and that he never attempted to resist. In

---

[4] Mr. Brooks intimates in his deposition testimony that the second burst of pepper spray may have been fired by Officer Rashkow. However, it is clear from the videotape that both bursts were fired by Officer Lill.

addition, two of Mr. Brooks's neighbors testified that Officer Lill repeatedly directed racial slurs at Mr. Brooks during the course of the arrest.

According to Officer Lill, when he initially informed Mr. Brooks that there was a warrant out for his arrest, he placed his hand on Mr. Brooks's arm to take him into custody. At this point, Mr. Brooks broke away from the officer's grasp and ran backwards. Officer Lill pursued and issued several commands to Mr. Brooks to get on the ground. Although Officer Lill had not expected any resistance given what he knew of Mr. Brooks from their previous acquaintance, he now feared that Mr. Brooks might attempt to flee or to attack him. Therefore, he administered the pepper spray, and, when Mr. Brooks failed to submit, he repeated his commands and administered the pepper spray again, at which point Mr. Brooks was rendered prostrate.

## B. Proceedings Before the District Court

Mr. Brooks filed this lawsuit against Officers Lill, Rashkow and Wrobel and their employer, the City of Aurora. The complaint sought recovery under 42 U.S.C. § 1983 for false arrest, false imprisonment and excessive force in violation of the Fourth Amendment's prohibition of unreasonable seizures, as well as an array of claims under Illinois law. The defendants asserted qualified immunity and moved for summary judgment on the federal false arrest and excessive force claims.

The district court held that the officers had probable cause to believe that Mr. Brooks had committed the

crime of resisting a peace officer and therefore that the defendants were entitled to summary judgment on the § 1983 false arrest claim. Moreover, although the defendants did not move for summary judgment on the § 1983 false imprisonment claim, the district court determined *sua sponte* that the existence of probable cause defeated that claim as well. Finally, the district court held that the defendants were entitled to summary judgment on the excessive force claim because it had not been clearly established that the use of pepper spray in the situation facing the officers would violate the Constitution. Accordingly, the district court granted summary judgment in favor of the defendants on all of Mr. Brooks's claims under federal law and dismissed the supplemental state law claims without prejudice. This appeal followed.

## II

## DISCUSSION

### A.  Standard of Review and Qualified Immunity

We review the district court's decision to grant summary judgment de novo, resolving all factual disputes and making all reasonable inferences in favor of the nonmoving party, in this case, Mr. Brooks. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Police officers sued under § 1983 often may claim qualified immunity "when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). To determine whether the defendants are entitled to qualified immunity, we ask (1) "whether [Mr. Brooks's] allegations make out a deprivation of a constitutional right" and (2) "whether the right was clearly established at the time of [the defendants'] alleged misconduct." *McAllister*, 615 F.3d at 881. "We may address the prongs in whichever order we believe best suited to the circumstances of the particular case at hand." *Id.* (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)); *see also Pearson*, 129 S. Ct. at 818, 821 (holding that it "should not be regarded as mandatory in all cases" to address first whether a deprivation occurred but "recogniz[ing] that it is often beneficial" and leaving the sequencing choice to the discretion of the individual courts); *Camreta v. Greene*, 131 S. Ct. 2020, 2032 (2011) ("In general, courts should think hard, and then think hard again, before turning small cases into large ones."). "[P]robable cause is an absolute defense" to a claim of unlawful arrest in violation of the Fourth Amendment. *Gonzalez*, 578 F.3d at 537.

## B. False Arrest and Imprisonment

On appeal, Mr. Brooks first asserts that the district court erred in granting summary judgment on his false arrest and imprisonment claims because the officers lacked probable cause to believe that he was committing

the crime of resisting a peace officer. Specifically, he contends that the conflicting evidence creates a jury question with respect to whether Mr. Brooks was resisting arrest or was complying with Officer Lill's orders. In addition, Mr. Brooks contends that a genuine dispute of material fact remains regarding whether Officer Lill procured the arrest warrant using knowingly false testimony, which, Mr. Brooks believes, would make his arrest an unreasonable seizure.[5]

We cannot accept this argument. Whether probable cause exists at the time of an arrest depends on whether "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Gonzalez*,

---

[5] The officers arrested Mr. Brooks pursuant to a facially valid warrant issued by a neutral magistrate. A facially valid warrant generally shields an officer relying in good faith on the warrant from liability for false arrest unless the "officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements." *Lawson v. Veruchi*, 637 F.3d 699, 704 (7th Cir. 2011) (quotation marks omitted). Mr. Brooks asserts that he "presented facts demonstrating that Lill's sworn statement that led the way for the warrant was a sham." Appellant's Br. 16. Because we determine that summary judgment was appropriate on a different ground, we decline to reach this issue.

578 F.3d at 537 (internal quotation marks omitted) (alter-ation in original). In Illinois, the crime of resisting a peace officer involves the commission of "a physical act of resistance or obstruction . . . that impedes, hinders, interrupts, prevents, or delays the performance of the officer's duties, such as by going limp or forcefully resisting arrest." *People v. Agnew-Downs*, 936 N.E.2d 166, 173 (Ill. App. Ct. 2010). Illinois courts define "re-sisting" or "resistance" as "withstanding the force or effect of or the exertion of oneself to counteract or de-feat." *Id.* Importantly for our purposes, "[r]esisting even an unlawful arrest of a known police officer violates the statute." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (citing *People v. Villarreal*, 604 N.E.2d 923, 926-27 (Ill. 1992), and *People v. Locken*, 322 N.E.2d 51, 53-54 (Ill. 1974)).[6]

In the present case, Mr. Brooks and Officer Lill both testified that, after Officer Lill informed him that he was under arrest, Mr. Brooks backpedaled away, escaped Officer Lill's attempt to grab his wrist and raised his arms to his shoulders.[7] Further, the videotape shows

---

[6] *See also* 720 ILCS 5/7-7 ("A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful.").

[7] In his briefs on appeal, Mr. Brooks denies that he
(continued...)

that Mr. Brooks repeatedly, physically rebuffed Officer Lill's attempts to grasp him and that, after he had stopped backtracking, Mr. Brooks turned to face Officer Lill and threw out his arms in what could be construed as a resisting or defensive posture.

Although there may be a genuine dispute of material fact with respect to whether Mr. Brooks intentionally attempted to "withstand[] the force or effect of" Officer Lill's efforts to arrest him in such a way as to "impede[], hinder[], interrupt[], prevent[], or delay[] the performance of [Officer Lill's] duties," *Agnew-Downs*, 936 N.E.2d at 173, the undisputed facts suffice to establish that a reasonable officer could have believed that he did. That reasonable belief is not enough to convict Mr. Brooks of the crime—as attested to by his state-court acquittal—but it is enough to cloak the officers with immunity from suit. *See Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

Moreover, although Officer Lill attempted to seize Mr. Brooks before probable cause for resisting arrest arose, Mr. Brooks's evasion of detention means that a successful Fourth Amendment seizure did not occur until after Mr. Brooks was incapacitated by the pepper spray. *See Acevedo v. Canterbury*, 457 F.3d 721, 725 (7th

---

(...continued)

backtracked or attempted to break away from Officer Lill's grasp. However, these denials contradict Mr. Brooks's own deposition testimony and his admissions on summary judgment in the district court.

Cir. 2006) (explaining that physical force that, under the totality of the circumstances, does not "detain the plaintiff significantly" is not a seizure); *see also California v. Hodari D.*, 499 U.S. 621 (1990). Officer Lill testified that, after he had informed Mr. Brooks that he was under arrest, he placed his hand on Mr. Brooks's wrist in an attempt to handcuff him, but Mr. Brooks "made a jerking motion and broke free of [Officer Lill's] grasp." R.28-3 at 15. Although a seizure can occur even where "the restraint on the individual's freedom of movement is brief," here the initial grasp did not "detain [Mr. Brooks] significantly." *Acevedo*, 457 F.3d at 724-25. Indeed, Mr. Brooks maintains that his freedom of movement was not curtailed at all until after he had backpedaled away from the officer. *See* R.24-3 at 60-61. The attempted seizure began when Officer Lill went to lay hands on Mr. Brooks, but Mr. Brooks's resistance prevented the action from reaching its completion, and, under *California v. Hodari D.*, 499 U.S. 621, 626-29 (1990), Officer Lill's declaration that Mr. Brooks was under arrest did not suffice to establish a seizure until Mr. Brooks finally submitted.[8]

Thus, we need not consider whether Officer Lill's warrant was procured with false testimony, because, at

---

[8] *See California v. Hodari D.*, 499 U.S. 621, 626-29 (1990) (holding that, when a police officer has attempted to effect a stop or an arrest with an assertion of authority, a Fourth Amendment seizure does not occur unless the suspect actually yields to the assertion).

the time Mr. Brooks was seized, the officers had probable cause to arrest him for resisting a peace officer. *See Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (holding that, if an officer has probable cause to arrest a suspect for any crime, there is no Fourth Amendment violation even if the officer lacked probable cause with respect to the actual offense charged); *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (explaining that an officer's subjective reason for making an arrest is immaterial so long as "a reasonable officer . . . would have had probable cause to arrest [the plaintiff] for any offense").[9] Because "[r]esisting even an unlawful arrest of a known police officer violates the statute," *Hardrick*, 522 F.3d at 762,[10] Officer Lill would have had

---

[9] Further, Mr. Brooks does not present any evidence that Officers Wrobel or Rashkow knew that the warrant was invalid; therefore, their reliance on the warrant would be sufficient to grant them qualified immunity even if there were no probable cause for the resistance charge. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007).

[10] Mr. Brooks submits that, according to the Illinois cases on which *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008), relies, *People v. Villarreal*, 604 N.E.2d 923 (Ill. 1992), and *People v. Locken*, 322 N.E. 2d 51 (Ill. 1974), this principle bars the arrestee's defense to criminal liability, but it does not eviscerate any subsequent civil remedies to which he may be entitled. Whatever the merits of this contention with respect to Illinois law, Mr. Brooks's remedy for unlawful seizure under the Fourth Amendment depends entirely on whether the officers had probable cause to believe that he was criminally liable for resisting a peace officer.

probable cause to arrest Mr. Brooks for resisting a peace officer even if the story that he and Officer Hix had told about seeing Mr. Brooks behind the wheel had been a rank fabrication. Under these circumstances, Mr. Brooks's remedy for the allegedly unlawful procurement of the warrant is a claim for malicious prosecution under state law, not a federal constitutional claim for false arrest under § 1983. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) (holding that "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking"). The district court dismissed Mr. Brooks's malicious prosecution claim without prejudice, leaving him free to refile that claim in state court.

Mr. Brooks also contends that the district court erred by *sua sponte* granting the defendants summary judgment on the false imprisonment claim without first offering Mr. Brooks a chance to respond and marshal his evidence. The district court held that the false imprisonment claim foundered for the same reason as the false arrest claim. We agree. Although Mr. Brooks maintains that claims for false arrest and false imprisonment are analytically distinct, he does not explain why the probable cause inquiry would be different for his false imprisonment claim under these circumstances, and we cannot perceive any reason that it would be.

## C. Excessive Force

Finally, Mr. Brooks challenges the district court's decision that the officers are entitled to qualified immunity

on the excessive force claim. Even when a police officer has probable cause to execute an arrest, he still may have committed an unreasonable seizure "if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Gonzalez*, 578 F.3d at 539 (internal quotation marks omitted). In making this determination, the Supreme Court has directed us to consider (1) "'the severity of the crime at issue'"; (2) "'whether the suspect poses an immediate threat to the safety of the officers or others'"; and (3) "'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). According to Mr. Brooks, the use of pepper spray against him was an unreasonable use of force given the relatively minor nature of the traffic offense, the lack of a threat to officer or public safety and Officer Lill's knowledge that Mr. Brooks intended only to tell his wife to follow him to the police station.

Courts often have held that it is reasonable to use pepper spray against a suspect who is physically resisting arrest;[11] conversely, when the use of pepper spray is gratuitous or unprovoked, courts often have considered it excessive.[12] *See generally Vinyard v. Wilson*, 311 F.3d

---

[11] *See Vinyard v. Wilson*, 311 F.3d 1340, 1348 & n.12 (11th Cir. 2002).

[12] *See, e.g., Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009); *see also Tracy v. Freshwater*, 623 F.3d 90, 98-99 (2d Cir.

(continued...)

1340, 1348 & nn.11-12 (11th Cir. 2002) (citing cases). As we have stated, a reasonable police officer could have believed that Mr. Brooks was resisting arrest. Although, at this stage of the litigation, we must believe Mr. Brooks when he says that he had communicated his willingness to submit to arrest, his actions readily could be construed to belie his words; indeed, Mr. Brooks employed a number of moves designed to thwart Officer Lill's attempts to take him into custody. Additionally, given the unique risks that effecting an in-home arrest warrant poses to the arresting officers, Officer Lill had a recognized interest in taking Mr. Brooks into custody outside his apartment. *See Maryland v. Buie*, 494 U.S. 325, 333 (1990) ("[U]nlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings."). An officer, faced with a suspect fleeing toward his home and ignoring police commands, is not obliged to give that suspect an opportunity to retreat into his home and, perhaps, to fortify himself or to escape before the officer employs reasonable means of incapacitation. *Cf. United States v. Norris*, 640 F.3d 295, 303 (7th Cir. 2011) (holding that an officer's single use of a taser was reasonable where used to subdue an

---

(...continued)

2010); *Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006); *Vinyard*, 311 F.3d at 1348-49; *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994).

arrestee who had failed to accede to repeated police commands to stop his retreat into his home).

Mr. Brooks contends, however, that the pepper spray was not applied until he had ceased backtracking and was passively facing the officers, and this description of events at least arguably squares with the video. According to Mr. Brooks, pepper spray therefore was not needed to effect his arrest.

We need not decide whether a constitutional violation occurred because we believe that it would not have been obvious to a reasonable police officer in Officer Lill's position that the application of pepper spray was unlawful. To be sure, whether and how much force is reasonable in a given situation can change as the situation develops, and what is appropriate at one point may be unnecessary later on. *See Cyrus*, 624 F.3d at 863. Yet controlling law would not have communicated to a reasonable officer the illegality of applying pepper spray to an arrestee who has ceased active, physical resistance for a couple of seconds but has not submitted to the officer's authority, has not been taken into custody and still arguably could pose a threat of flight or further resistance. Prior cases have charted only clearer waters. *See, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) (potentially unreasonable to "appl[y] pepper spray after [arrestee] had already been handcuffed and was offering no physical resistance of police commands"); *Henderson v. Munn*, 439 F.3d 497, 503-04 (8th Cir. 2006) (unreasonable to use pepper spray against someone "lying face down on the ground with both arms handcuffed behind his back"); *Vinyard*, 311 F.3d at 1349

(unreasonable to apply pepper spray to a woman "under arrest for offenses of minor severity, handcuffed, secured in the back of a patrol car, and posing no threat to [the officer], herself or the public"); *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) (stating that "the use of pepper spray may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force" (internal quotation marks and emphasis omitted)). Indeed, given Mr. Brooks's previous actions and his failure to follow Officer Lill's commands to get on the ground, it would not have been obvious to Officer Lill that even the second application of the pepper spray was not "a reasonably proportionate response" to gain Mr. Brooks's cooperation and to avert "an escalation of violence." *Norris*, 640 F.3d at 303 (internal quotation marks omitted). As such, the officers are entitled to qualified immunity, and the district court properly granted summary judgment in favor of the defendants on the excessive force claim.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

7-6-11