# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1647

_____

| | | |
|---|---|---|
| Hans Joachim Keil, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Glenn Triveline; Laura Foster; Michael | * | |
| Spinella; Todd Hamilton; Jack | * | |
| Barnhart; United States, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 22, 2011
Filed: November 21, 2011

_____

Before RILEY, Chief Judge, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

On September 9, 2008, Hans Joachim Keil was arrested by federal agents for immigration violations. Criminal charges were later dismissed on motion of the government, and Keil brought this action against the agents, alleging that he was unlawfully arrested in violation of his rights under the Fourth Amendment. The district court[1] granted the agents' motion for summary judgment, concluding that they

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

were entitled to qualified immunity because they had probable cause to arrest Keil. Keil appeals, and we affirm.

I.

In October 2007, United States Immigration and Customs Enforcement ("ICE") agents began an investigation into the mistreatment of Samoan performers at the Dutton Family Theater in Branson, Missouri. According to information provided by a tipster, the theater had recruited Samoan performers to come to the United States for a Pacific Island dance show. The Samoans entered the United States under P-3 performer visas, which allow certain entertainers to enter the country "temporarily and solely to perform, teach, or coach," as part of a "program that is culturally unique." 8 U.S.C. § 1101(a)(15)(P)(iii). The P-3 visa does not authorize other types of work, but the tipster informed ICE that the theater proprietors required the performers to work in food service, child care, and housekeeping.

ICE Senior Special Agent Laura Foster, a defendant in this action, visited the Dutton Theater to investigate, and interviewed some of the Samoan performers working at the theater delicatessen. The performers told Agent Foster that they were required to work at the delicatessen and motel in addition to performing. They said that Keil and his daughter recruited them to come to the United States and to perform at the theater. Foster obtained a copy of the performers' P-3 visa petitions. The petitions were supported by a letter from Keil, who purported to be an Associate Minister of the Government of Samoa.

In late November 2007, ICE agents took fourteen of the performers into custody for working outside the scope of their visas. When questioned by ICE agents, the performers again stated that Keil told them they could work at the delicatessen and motel in addition to performing. Some of the performers also stated that Keil told

them to tell United States consular officials conducting their visa interviews that they would be performing only in the theater and promoting Samoa.

The following month, Agent Foster met with Keil in Branson. Keil told Foster that he was a minister for the Samoan government and was born in Western Samoa to a German father and a Western Samoan and Chinese mother. Keil also said that he helped to assemble the Samoan dancers for the show, that he contacted a United States consular official to expedite the visa process, and that he had come to Branson to escort the performers back to Samoa. After meeting with Keil, Foster checked immigration databases to confirm Keil's statements. The databases showed that Keil had entered the country with a United States passport, but that he departed shortly after the interview for Belgium.

Because Keil told Foster that he was born outside of the United States and made no mention of being a United States citizen, Foster further investigated Keil's use of a United States passport. Foster checked federal passport databases and discovered that Keil had been issued a United States passport several times since 1977, occasionally claiming residence at an address in Buena Park, California, where his mother resided. Agent Foster also asked for an analysis of Keil's citizenship status from the United States Citizenship and Immigration Services ("CIS"). CIS reviewed Keil's immigration records and determined that he was not a United States citizen. Although Keil's mother was a United States citizen, the law then in effect provided that a child born abroad to one United States citizen parent qualifies for United States citizenship only if the parent lived in the United States for at least five years after the age of sixteen. Nationality Act of 1940, Pub. L. No. 76-853, § 201(g), 54 Stat. 1137, 1139 (1940). CIS determined that Keil's mother did not satisfy this requirement, and that Keil therefore was not a citizen.

Foster also discovered that Keil applied for a certificate of citizenship from the Immigration and Naturalization Service ("INS") in 1967. On his application, Keil

represented that he derived citizenship through his mother, and that his father was not a United States citizen. The INS instructed Keil to appear for a hearing, but Keil never appeared, and the INS did not grant his application. Keil filed a second application for a certificate of citizenship in 1976, and the INS asked Keil for proof of his mother's presence in the United States for sufficient time prior to Keil's birth. No records indicated that Keil responded or was ever issued a certificate of citizenship.

When the Samoan performers returned to Branson the following year, the agents interviewed them again. The agents then decided to arrest Keil if he returned to the United States. On September 9, 2008, the agents arrested Keil pursuant to an administrative immigration warrant. Immediately before the arrest, the agents asked Keil if he had a passport and if he was a United States citizen. Keil answered affirmatively. The agents seized Keil's passport and arrested him.

The following day, one of the agents submitted an affidavit in support of a criminal complaint against Keil for making a false claim of citizenship in violation of 18 U.S.C. § 911, and misuse of a passport in violation of 18 U.S.C. § 1544. A magistrate judge issued the complaint, formally charging Keil with the offenses. A week later, the State Department determined that Keil was not entitled to United States citizenship through his mother, and revoked his passport.

A month after his arrest, Keil discovered that he was entitled to United States citizenship through his father. Keil's father was a United States citizen at birth because his father, Keil's grandfather, became a naturalized citizen in 1896. As a result, the United States Attorney moved to dismiss all charges against Keil.

Keil brought this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against the four federal agents involved in his investigation and arrest, alleging that his arrest and detention violated

the Fourth and Fifth Amendments. The district court granted summary judgment for the agents on all counts, holding that they were entitled to qualified immunity because the arrest was supported by probable cause that Keil had violated 18 U.S.C. §§ 911 and 1544. Keil appeals, alleging that the agents were not entitled to qualified immunity.

## II.

Qualified immunity shields public officials from civil lawsuits when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether the agents are entitled to qualified immunity, we consider (1) whether the facts alleged, construed in the light most favorable to Keil, establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the answer to either question is no, then the agents are entitled to qualified immunity. *Id*. at 236. We review the district court's decision *de novo*, considering the evidence in the light most favorable to Keil. *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

An arrest does not violate the Fourth Amendment if it was supported by probable cause. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). "Officers may also be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." *Id*. The issue, therefore, is whether the agents had "arguable probable cause" to arrest and detain Keil. *Id*. The arrest was lawful, moreover, if the agents had probable cause to believe Keil had violated any applicable statute, even one not contemplated by the agents at the moment of arrest. *Devenpeck v. Alford*, 543 U.S.

146, 153 (2004); *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1106 (8th Cir. 2004).

Although the criminal complaint did not charge Keil with offenses relating to visa fraud, the agents contend that they had arguable probable cause to arrest Keil for such offenses, and we agree. It is a federal offense to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law[.]" 8 U.S.C. § 1324(a)(1)(A)(iv). During the course of her investigation, Agent Foster discovered that Keil helped the performers get P-3 visas and told them they could perform work not authorized under these visas. The performers also informed Foster that Keil told them nonetheless to inform consular officials granting their visas *only* that they would be performing and promoting Samoa, not that they would perform other work. These facts gave the agents arguable probable cause to arrest Keil for a violation of 8 U.S.C. § 1324. This information also established at least arguable probable cause to believe that Keil conspired to commit visa fraud in violation of 18 U.S.C. §§ 371 and 1546. These statutes forbid an agreement to use or obtain a visa that is procured by means of any false claim or statement, and the agents had grounds to believe that Keil entered into an agreement or understanding to use and obtain visas for the performers based on false information about the nature of their work in Branson.

We also conclude that the agents had arguable probable cause to arrest Keil for violating 18 U.S.C. §§ 911 and 1544, the two offenses for which he was charged in the criminal complaint. Section 911 makes it a crime falsely and willfully to represent oneself to be a citizen of the United States, and § 1544 forbids the willful and knowing use of a passport in violation of the conditions, restrictions, or rules regulating passports. One such rule provided that only a United States national may be issued a passport. 22 C.F.R. § 51.2 (2008).

Keil represented himself as a United States citizen to the agents immediately before they arrested him. Keil also represented himself as a United States citizen to immigration officials upon his arrival in the country. The agents reasonably believed these representations were false, because United States Citizenship and Immigration Services had determined through a review of records he was not a citizen, and Keil had told Foster that he and his parents were born outside the United States. The agents also had grounds to believe that Keil knew and believed then that his claim of citizenship was false. He twice applied unsuccessfully for a certificate of citizenship, and failed to provide the INS with necessary information to establish his citizenship. The information about the citizenship of Keil's father came to light only later. The facts available in September 2008 thus gave the agents arguable probable cause to arrest Keil for violating §§ 911 and 1544.

Keil argues that the agents did not have arguable probable cause to arrest Keil, because they knew he was a United States citizen. According to Keil, possession of a passport established as a matter of law that he was a citizen, and the agents knew he possessed a passport. Therefore, Keil argues, the agents knew he could not have violated §§ 911 and 1544.

This argument relies on 22 U.S.C. § 2705(1), which provides that a passport, during its period of validity, "shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction[.]" Keil contends that this statute makes the possessor of a facially valid passport a United States citizen by operation of law. The agents, however, argue that § 2705 merely makes a passport conclusive proof of the holder's citizenship in administrative immigration proceedings. *See In re Villanueva*, 19 I. & N. Dec. 101, 102-03 (B.I.A. 1984); *see also Vana v. Attorney General*, 341 F. App'x 836, 839 (3d Cir. 2009).

We doubt that Keil's reading of § 2705 is correct, but whatever its merit, his interpretation was not clearly established when the agents arrested Keil. While § 2705 makes a passport conclusive proof of citizenship in administrative immigration proceedings, no court has held that possession of a passport precludes prosecution under § 911, and there are indications in the case law that it does not. Non-citizens in possession of passports at the time of their arrests have been convicted of violating § 911 for using those passports as proof of citizenship. *See, e.g.*, *United States v. Maciel-Alcala*, 612 F.3d 1092, 1094-95 (9th Cir. 2010); *United States v. Gomez-Castro*, 605 F.3d 1245, 1247 (11th Cir. 2010); *United States v. Castillo-Roman*, 291 F. App'x 273, 274 (11th Cir. 2008); *United States v. Lowes*, 265 F. App'x 887, 888 (11th Cir. 2008). The plain language of § 1544 makes it an offense to use a passport in violation of the rule that a passport may be issued only to a United States national. Keil cites no authority that § 2705(1) precludes a prosecution under § 1544 of one who uses a United States passport while knowing that he is not in fact a United States national. Beyond the decision in *Villanueva* concerning administrative proceedings, the only support that Keil cites for his interpretation of § 2705 is *United States v. Clarke*, 628 F. Supp. 2d 1, 8 (D.D.C. 2009). But *Clarke* decided only that possession of a passport is conclusive proof of a victim's citizenship status when that status is an element of a criminal offense. It does not establish the broader proposition urged by Keil.

*       *       *

For these reasons, we conclude that the agents had at least arguable probable cause to arrest Keil for one or more violations of federal law. The judgment of the district court is affirmed.

_____