

# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

| | | |
|---|---|---|
| DEANNA COPELAND, | ) | No. ED101012 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Lincoln County |
| vs. | ) | |
| | ) | Honorable David H. Ash |
| LUCAS WICKS, | ) | |
| | ) | |
| Defendant/Respondent. | ) | Filed:  January 27, 2015 |

The plaintiff mother, Deanna Copeland, appeals the judgment entered by the Circuit Court of Lincoln County granting summary judgment in favor of the defendant, Detective Lucas Wicks.  The mother sued the detective seeking damages pursuant to 42 U.S.C. sec. 1983 for illegal seizure of her person in violation of her constitutional rights and damages for malicious prosecution.

As to the mother's section 1983 claim, we conclude that the detective's probable-cause statement, when corrected of misstatements, supported probable cause to believe that the mother had committed a crime against the child resulting in the child's injury, and that the detective is entitled to qualified immunity.  We would affirm the trial court's grant of summary judgment in favor of the detective as to the section 1983 claim.

As to the mother's malicious-prosecution claim, however, we are compelled to reach a different result.  Federal cases analyzing section 1983 claims and Missouri cases analyzing state malicious-prosecution claims define the term "probable cause" differently.  Missouri also

employs a different approach to official immunity than the federal courts employ with qualified immunity. As a result, we would reverse and remand the trial court's grant of summary judgment to the defendant in connection with the malicious-prosecution claim. However, because of this anomalous result, we transfer the case to the Missouri Supreme Court due to its general interest and importance and for reexamination of existing law.

## Facts and Procedural Background

In May 2006, authorities received a report of suspected abuse of the child, L.C., who had sustained severe bruising around her eye and mouth. L.C. was 23 months old at the time, and had developmental delays. She was unable to crawl well, walk, or climb although she was able to pull herself up to stand. Detective Wicks of the Lincoln County Sheriff's Department and another detective went to the mother's home to interview her and her then-boyfriend. The detectives took both the mother and the boyfriend into custody and interviewed them after reading them their *Miranda* rights.

During the interview, the mother explained that she put the child to bed in her play yard, and left the child under the boyfriend's supervision when she went to work in the evening. When the mother returned home from work at about 4:30 the following morning, her boyfriend was sleeping, and she found L.C. shut in the bathroom, sitting on the bathroom floor with toilet paper scattered everywhere.

The mother repeatedly insisted that she had seen only a small bruise the child received near her eye at daycare a couple of days earlier, that the child had only a small red mark on her mouth, and that the mother did not know how the child sustained injury. The mother then admitted that she had been frustrated and angry to come home and find the child in the bathroom with toilet paper everywhere. She stated that she opened the bathroom door forcefully, and that

2

she handled the child roughly. The mother eventually stated that the bruising around the child's eye was consistent with the doorknob, and she speculated that perhaps the child had struck her head unbeknownst to the mother when the mother picked up the child. The mother then stated that she took the child to the other bathroom to bathe her. After speculating that perhaps the child suffered bruising near her mouth when the mother cleaned the child's face, the mother then explained how she ran the bathwater, stood the child on the side of the tub to undress her, and then as the mother sat on the floor, she "heaved" the child into the tub. The mother said that the child was not "sturdy" enough when the mother released her, and that the child slipped and fell, striking her face on the side of the tub. The detective expressly asked the mother whether she "threw" the child into the tub, and the mother immediately and expressly denied throwing the child into the tub.

In his probable-cause statement submitted to the prosecuting attorney for the filing of charges and to the court for issuance of an arrest warrant, the detective stated that he had probable cause to believe that the mother "committed criminal offenses in Lincoln County, Missouri." He did not identify the class-C felony of abuse of a child nor did he name any other specific offense. The detective stated, "[The mother] admitted she was angry and picked [up] L.C. in a hurried manor (sic). [The mother] stated she slammed L.C.'s head into the doorknob due to anger." The detective continued, "[The mother] stated she threw L.C. into the bathtub causing severe bruising and swelling to L.C.'s lip." In his affidavit in support of his motion for summary judgment, the detective stated that he submitted to the prosecuting attorney his probable-cause statement, his detailed incident report describing his contact with the mother and the boyfriend, and photographs of the child's injuries. But the detective did not submit the mother's custodial interview to the prosecuting attorney.

3

The prosecuting attorney charged the mother with the class-C felony of abuse of a child, and the mother was arrested pursuant to a warrant issued by the court. The charges stated that the mother "knowingly inflicted cruel and inhuman punishment upon L.C. . . . by slamming L.C.'s head into a doorknob and throwing L.C. into a bathtub." The criminal case was resolved in the mother's favor.[1] The mother then filed suit against the detective, and sought damages for malicious prosecution and damages pursuant to 42 U.S.C. sec. 1983 for illegal seizure of her person in violation of her constitutional rights.

In her two-count petition, the mother asserted that the detective made malicious misstatements of material fact that resulted in the State filing felony child-abuse charges against her. She alleged that the detective acted maliciously, with evil intent, and with a reckless indifference to her rights. The mother's suit focuses on two declarations contained in the detective's probable-cause statement, which the mother claims are false. First, the detective wrote that the mother "stated she slammed L.C.'s head into the doorknob due to anger." Second, the detective wrote that the mother "stated she threw L.C. into the bathtub causing severe bruising and swelling to L.C.'s lip." The mother denied that she made such statements admitting to intentional acts of violence against the child, and pointed to her custodial interview with the detective to support her contentions. The mother alleged no material omissions in the probable-cause statement. The mother sought damages pursuant to 42 U.S.C. sec. 1983 for violation of her constitutional rights and for a state-law claim of malicious prosecution.

The trial court granted summary judgment in favor of the detective based on qualified immunity. The trial court determined that the detective was entitled to qualified immunity because probable cause existed to arrest and charge the mother, and because the detective's statements "were not so much different that the failure to directly quote the [mother] amounted

---

[1] The parties failed to further clarify the criminal case's resolution.

4

to malicious disregard of the truth and other evidence submitted with the probable-cause statement including photos of the alleged victim and her injuries and the tape containing [the mother's] custodial interview provided probable cause . . . ."[2] The mother appeals.

Discussion

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo*. *Id*. When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom the court entered judgment. *Id*. "We will affirm the judgment where the trial court reached the correct result, even if for the wrong reason." *Carman v. Wieland*, 406 S.W.3d 70, 73 (Mo. App. E.D. 2013).

In three points on appeal, the mother claims the trial court erred in granting summary judgment in favor of the detective because the trial court failed to view all evidence and reasonable inferences in the light most favorable to the mother as the non-movant, because the trial court applied an improper standard for qualified immunity, and because the trial court made a factual determination of probable cause properly reserved for the jury.[3] Under our *de novo* standard of review, we assess the mother's section 1983 and malicious-prosecution claims separately to determine whether the trial court properly granted summary judgment for the detective as to each claim.

---

[2] According to the detective's affidavit submitted with his motion for summary judgment, he did not submit either a recording or a transcript of the mother's custodial interview to the prosecuting attorney along with his probable-cause statement.

[3] At least two of the mother's points are defective and fail to comply with Rule 84.04(d)(1). The rule provides in relevant part that where the appellate court reviews the decision of a trial court, each point shall identify the challenged trial court ruling or action, state concisely the legal reasons for the claim of reversible error, and explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

*Section 1983 Claim*

The mother sued the detective for damages pursuant to 42 U.S.C. sec. 1983 for illegal seizure of her person in violation of her constitutional rights. Through 42 U.S.C. section 1983, federal law provides a remedy for actions taken under color of state law that deprive citizens of their federal constitutional or statutory rights. *Bonds v. Mo. Dep't of Mental Health*, 887 S.W.2d 418, 421 (Mo. App. W.D. 1994). Although section 1983 is a federal law, Missouri state courts share concurrent jurisdiction with the federal courts. *Duvall v. Lawrence*, 86 S.W.3d 74, 81 (Mo. App. E.D. 2002). Furthermore, a claimed violation of state law, even if true, does not equate to a violation of federal constitutional rights to due process of law. *Bonds*, 887 S.W.2d at 421.

According to the Fourth Amendment to the United States Constitution, an arrest warrant may issue only upon a finding of probable cause by a neutral and detached magistrate. *In re Green*, 593 S.W.2d 518, 518 (Mo. banc 1979). No warrant for arrest shall issue without a prior finding by a court of probable cause. *Id.* "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *United States v. Jones*, 432 F.3d 34, 41 (1st Cir. 2005). The probable-cause inquiry focuses on what the officer knew at the time of the arrest, and should take the totality of the circumstances into consideration. *Id.* Probable cause does not require evidence sufficient to convict, but merely enough to warrant a reasonable belief that the individual engaged in criminal activity. *Id.* at 43. "'[P]robable cause is an absolute defense' to a claim of unlawful arrest in violation of the Fourth Amendment." *Brooks v. City of Aurora*, 653 F.3d 478, 483 (7th Cir. 2011). An arrest supported

6

by probable cause does not violate the Fourth Amendment. *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011).

"Officers may be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable" *Id.*; *see also Brooks*, 653 F.3d at 483 (police officer sued under section 1983 may claim qualified immunity when he acted in a manner he reasonably believed to be lawful). Thus, the issue becomes whether the detective had "arguable probable cause" to seek the mother's arrest. *Keil*, 661 F.3d at 985.

In the case of an officer applying for a warrant, the U.S. Supreme Court has held that the judicial process will on the whole benefit from a rule of qualified immunity rather than absolute immunity. *Malley v. Briggs*, 475 U.S. 335, 343 (1986). Qualified immunity is an immunity from suit rather than simply a defense to liability. *State ex rel. Wilhoit v. Seay*, 248 S.W.3d 135, 137 (Mo. App. S.D. 2008). As with absolute immunity, a party effectively loses qualified immunity when the court erroneously allows a case to proceed to trial. *Id.* To determine whether the detective is entitled to qualified immunity, we ask (1) whether the mother's allegations make out a deprivation of a constitutional right; and (2) whether the right was clearly established at the time of the detective's alleged misconduct. *Brooks*, 653 F.3d at 483. We may address these questions in whichever order we believe better suits the circumstances of the case at hand. *Id.*

For her claim for illegal seizure of her person, the mother alleged that "[the detective] maliciously misstated facts known to him in order to secure a warrant for [the mother's] arrest." She continued, "had [the detective] not maliciously misstated those facts, no probable cause would have existed as the basis for a warrant." The mother concluded that the detective's

7

conduct was "outrageous," "motivated by evil intentions," and "demonstrated a reckless indifference for the rights of [the mother]."

It is a clearly established constitutional right that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause. *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir. 1991). "A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996)(citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). An official who causes such a deprivation is subject to liability under section 1983. *Id*. We consider whether the warrant affidavit was so materially false that the defendant manifested reckless disregard for the truth in submitting it. *Id*. at 1099.

Qualified immunity generally turns on the objective legal reasonableness of the official's action, assessed in light of the clearly established legal rules in place when the action was taken. *Burk*, 948 F.3d at 494. The key to the qualified-immunity analysis is the public official's *objective* reasonableness. *Bagby*, 98 F.3d at 1098 (emphasis in original). In applying this objective standard, we bear in mind that a party may not collaterally attack a warrant if all the false and reckless portions of the warrant affidavit are corrected, and if the corrected affidavit still supports a finding of probable cause. *Id*. at 1099. Qualified immunity remains appropriate if the defendant public official has been accused of submitting a recklessly false affidavit and if a corrected affidavit would still provide probable cause to arrest or search. *Id*.

The heart of the parties' dispute involves two assertions contained in the detective's probable-cause statement. First, the detective wrote that the mother "stated she slammed L.C.'s head into the doorknob due to anger." The mother made no admission akin to "slamm[ing] L.C.'s head into the doorknob due to anger," which would constitute an intentional act of

8

violence against the child. The mother speculated that perhaps the child accidently hit her head on the doorknob unbeknownst to the mother when the mother picked up the child. That speculation by the mother constituted nothing more than a guess as to how the child *might* have sustained bruising around her eye, and is substantially different from the mother "stat[ing] she slammed L.C.'s head into the doorknob due to anger." In his memorandum in support of his summary-judgment motion, the defendant acknowledges that the mother did not state that she "slammed" the child's head into the doorknob in anger. Reviewing the record in the light most favorable to the non-movant mother, we find this first disputed statement to be unsupported by the record, and in reckless disregard for the truth.

The second statement at issue involves the detective's assertion that the mother "stated she threw L.C. into the bathtub causing severe bruising and swelling to L.C.'s lip." The mother explained how she ran the bathwater, stood the child on the side of the tub to undress her, and then as the mother sat on the floor, she "heaved" the child into the tub. The mother said that the child was not "sturdy" enough when the mother released her, and that the child slipped and fell, striking her face on the side of the tub. The mother acknowledged in the interview that she handled the child roughly and that the child's lip injuries were because of her, the mother. The mother maintains, however, that she did not state that she "threw" the child into the bathtub, rather she described how the child accidentally slipped and fell, sustaining bruising around her mouth as a result. The detective argues that the use of the word "threw" instead of the word "heaved" is a matter of mere semantics, and that it has substantially the same meaning as "heaved" in this context. As to this second disputed statement, we agree with the detective. Even assessing the record in the light most favorable to the mother, the use of the word "threw" manifests no reckless disregard for the truth in the context of the case.

9

We further conclude that if the detective's probable-cause statement were corrected, the statement would have still provided probable cause to arrest the mother for having "committed criminal offenses" as the detective stated. Even if the statement about slamming the child's head into a doorknob were removed entirely, and even if the statement that the mother "threw" the child into the bathtub were replaced with the mother's account, the statement would still provide probable cause to arrest the mother. Based on the mother's changing statements throughout the course of her contact with police, her acknowledgement that she had been rough with the child, her final admission that she "heaved" the child into the slippery tub and let her go without ensuring the child was steady, the photographs of the severe bruising to the child's face, and the information provided to the detective by the Children's Division, including a physician's opinion that the injuries were not accidental, a reasonably prudent person would believe that the mother had committed a crime. The detective's probable-cause statement did not identify a specific offense, such as abuse of a child, for which the mother should be arrested. It simply stated that the detective had probable cause to believe that the mother had committed criminal offenses. The prosecuting attorney, not the detective, chose the offense to charge, and the proposed arrest warrant was submitted to the court accordingly.

The mother was, in fact, charged with and arrested for the class-C felony of abuse of a child. As charged here under the statute in effect at the time, a person committed the crime of abuse of a child if she *knowingly* inflicted cruel and inhuman punishment upon a child who was less than 17 years old. Section 568.060.1(1) RSMo. (2000)(emphasis added).[4] Based on a corrected probable-cause statement, the State could nonetheless have charged the mother with another offense, such as second-degree endangering the welfare of a child. A person commits

---

[4] The legislature re-wrote section 568.060 in 2012, and it is now an entirely different statute than it was at the time the mother was charged. S.B. 628 §A, 96th Gen. Assem. 2d Reg. Sess. (Mo. 2012).

10

the offense of endangering the welfare of a child in the second degree when she acts with *criminal negligence* in a manner that creates a substantial risk to the life, body, or health of a child less than 17 years old. Section 568.050.1(1) RSMo. (Supp. 2006)(emphasis added). A person acts with criminal negligence or is criminally negligent when she fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation. Section 562.016.5 RSMo. (2000).

The mother admitted to handling the child roughly, a child with developmental delays who could not walk and could only pull herself to a standing position, and to "heaving" the child into a slick bathtub, and then letting her go without ensuring that the child was either steady on her feet or safely seated. These admissions support a finding of probable cause that the mother failed to be aware of a substantial and unjustifiable risk that the child would fall and suffer injury, and that the mother's failure constituted a gross deviation from the standard of care that a reasonable person would use under the circumstances.

An officer's subjective reason for making an arrest need not be the criminal offense for which the known facts provide probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Thus, the probable-cause inquiry does not necessarily hinge on the offense actually invoked by the officer in the probable-cause statement, but rather upon whether the facts known at the time objectively provided probable cause. *See Jones*, 432 F.3d at 41 (stating it was irrelevant that booking officer cited defendant for "intent to rob while armed"; arrest was valid if, on facts known to arresting officers, probable cause existed to believe defendant was committing another crime). An arrest is lawful when an officer has probable cause to believe that a party violated

11

any applicable statute, even one not contemplated by the officer at the moment of arrest. *Keil*, 661 F.3d at 986 (citing *Devenpeck,* 543 U.S. at 153).

Because we conclude that a corrected probable-cause statement would still have provided arguable probable cause to support the mother's arrest for an offense causing injury to the child—albeit a less serious one than the State decided to charge—we conclude that the detective is entitled to qualified immunity on the mother's section 1983 claim under the circumstances of this case.

### Malicious-Prosecution Claim

The mother also sought damages under a state-law claim of malicious prosecution. The mother alleged that the detective in his probable-cause statement made "malicious misstatements of material facts," that the detective acted "maliciously," "without reasonable grounds," and that his conduct was "outrageous" and "motivated by evil intentions."

The plaintiff must plead and prove six elements in order to prevail on a malicious-prosecution claim: (1) commencement of an earlier prosecution against the plaintiff; (2) instigation of the prosecution by the defendant; (3) termination of the proceedings in the plaintiff's favor; (4) absence of probable cause for the prosecution; (5) malice by the defendant in instituting the prosecution; and (6) damage to the plaintiff resulting from the prosecution. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 114 (Mo. App. E.D. 2008). A plaintiff must prove all six elements, and failure to prove any one element results in failure to make a submissible case of malicious prosecution. *Id*. A defendant in a malicious-prosecution suit may establish a right to summary judgment by showing facts that negate any one of the plaintiff's elements. *Id*. On summary judgment and appeal, the parties have addressed only the probable-cause element. Where the facts are not in dispute, the determination of whether probable cause existed is a

12

question of law for the court, not a question of fact for the jury. *Simpson v. Indopco, Inc.*, 18 S.W.3d 470, 474 (Mo. App. W.D. 2000).

In our analysis of the mother's section 1983 claim, we determined that a corrected probable-cause statement would establish that probable cause existed to believe that the mother committed some offense against the child leading to the child's injury, and thus the detective is entitled to qualified immunity on that claim. As to the mother's state-law malicious-prosecution claim, however, we are compelled to reach a different result. Federal cases analyzing section 1983 claims and Missouri cases analyzing state malicious-prosecution claims define the term "probable cause" differently. The federal cases also employ a different approach to qualified immunity than do the Missouri cases.

In Missouri jurisprudence, "[p]robable cause for the initiation of a criminal prosecution 'is reasonable cause and may be defined as the existence of such a state of facts as would warrant an ordinarily cautious and prudent man in the belief that the accused was guilty *of the offense charged*." (Emphasis added). *Haswell v. Liberty Mut. Ins. Co.*, 557 S.W.2d 628, 633 (Mo. banc 1977)(*overruled on other grounds by Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803 (Mo. banc 1984)); *Hughes v. Aetna Ins. Co.*, 261 S.W.2d 942, 949 (Mo. 1953); *Higgins v. Knickmeyer-Fleer Realty and Inv. Co.*, 74 S.W.2d 805, 813 (Mo. 1934). "Probable cause" for initiating prosecution is reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious person to believe that the person accused is guilty of *the offense charged*. (Emphasis added). *Crow*, 259 S.W.3d at 115; *Simpson*, 18 S.W.3d at 474. *Contra Dodson v. MFA Ins. Co.*, 509 S.W.2d 461, 467 (Mo. 1974)("The test of probable cause is whether the facts and circumstances would warrant a belief in an ordinarily cautious person that another had committed *a crime*.") (Emphasis added). The Missouri malicious-prosecution cases

13

defining "probable cause" as "the existence of such a state of facts as would warrant an ordinarily cautious and prudent man in the belief that the accused was guilty *of the offense charged*" do not allow us to affirm the trial court's grant of summary judgment in favor of the detective as to the mother's malicious-prosecution claim.

Furthermore, the differing approach to qualified immunity employed in the federal cases and official immunity in the Missouri cases likewise prevents us from affirming the grant of summary judgment as to the state-law malicious-prosecution claim.[5] The U.S. Supreme Court has stated that an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. *Malley*, 475 U.S. at 341; *see also Burk*, 948 F.2d at 494 (stating that a defendant's good faith or bad faith is irrelevant to the qualified-immunity inquiry). On the other hand, Missouri courts have stated that qualified immunity, or official immunity, does not apply to those discretionary acts done in bad faith or with malice. *Wilhoit*, 248 S.W.3d at 139 (citing *Davis v. Bd. of Educ.*, 963 S.W.2d 679, 688 (Mo. App. E.D. 1998)). "Bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Davis*, 963 S.W.2d at 689. We have already determined in our analysis of the mother's section 1983 claim that, in reviewing the record in the light most favorable to the mother, the detective's statement that the mother "stated she slammed L.C.'s head into the doorknob due to anger" is unsupported by the record and suggests a reckless disregard for the truth. In addition, because the parties have not addressed the malice element in any substantial manner, the content of the summary-judgment record before us is not such that it would allow a court to determine whether the detective acted in bad faith or with malice when he included this contention in his probable-cause statement.

---

[5] Official immunity is a qualified immunity. *Davis v. Bd. of Educ.*, 963 S.W.2d 679, 688 (Mo. App. E.D. 1998).

14

For these reasons, we cannot affirm the grant of summary judgment in favor of the detective as to the mother's malicious-prosecution claim. We must reverse and remand to the trial court on that claim.

We recognize that the differing results as to the existence of immunity for the section 1983 claim and the malicious-prosecution claim present an anomaly. That we should arrive at different conclusions on the two claims is not inherently inappropriate because the claims are separate and distinct and arise under separate laws. For example, a claimed violation of state law, even if true, does not equate to a violation of federal constitutional rights to due process of law. *Bonds*, 887 S.W.2d at 421. However, a grant of partial immunity falls far short of a grant of true immunity. The law often grants immunity to public servants entrusted with great discretion. The shield of immunity protects the public servant trying to exercise that discretion on the public's behalf. If the shield can be pierced by the plaintiff merely repleading her cause of action, the shield is only of marginal value. Further, under the circumstances of this case, we question Missouri's inclusion of the language referring to "the offense charged" in its definition of probable cause rather than language referring to "a crime" as in the federal definition of probable cause. Inclusion of "the offense charged" in the definition of probable cause in Missouri jurisprudence is particularly troubling when analyzing a probable-cause statement submitted to support the issuance of a warrant because the affiant who completes the probable-cause statement is not responsible for choosing the offense charged.[6] Further, the prosecutor who identifies the offense to charge and the judge who decides whether to issue an arrest warrant for the accused on the charged crime enjoy absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 418, 427 (1976). Under these circumstances, we believe it unjust to burden a police officer

---

[6] We express no opinion on whether "the offense charged" should be included in Missouri's definition of probable cause in cases where the arrest occurs without a warrant. In those cases, the officer is the person choosing upon what charge a person will be arrested.

15

with a requirement to correctly identify the specific offense that another official might ultimately charge and to state that probable cause exists for that offense.

As an intermediate appellate court, we cannot resolve the differing results as to the detective's immunity. Consequently, we transfer the case to our Supreme Court due to its general interest and importance and for reexamination of existing law.

## Conclusion

Because we conclude that a corrected probable-cause statement would have provided arguable probable cause to support the mother's arrest for an offense causing injury to the child, we conclude that the detective is entitled to qualified immunity on the mother's section 1983 claim under the circumstances of this case. Therefore, we would affirm the trial court's summary judgment in favor of the detective as to the mother's section 1983 claim.

However, given the definition of "probable cause" in the Missouri malicious-prosecution cases and Missouri's different approach to qualified immunity, we would reverse and remand the trial court's grant of summary judgment in connection with the malicious-prosecution claim.

We transfer the case to our Supreme Court due to its general interest and importance and for reexamination of existing law.

_Lawrence E. Mooney_
LAWRENCE E. MOONEY, PRESIDING JUDGE

CLIFFORD H. AHRENS, J., and
GLENN A. NORTON, J., concur.